Stanley A. HAMILTON

and

Michael J. Hermann, Claimants–
Appellants,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Respondent–Appellee.

Nos. 93–7090, 93–7091.

United States Court of Appeals,
Federal Circuit.

Nov. 8, 1994.

the Court of Veterans Appeals dismissing his appeal for lack of jurisdiction. That judgment was entered May 13, 1993, 4 Vet.App. 528, pursuant to the opinion of the court dated April 15, 1993. *Hamilton v. Brown,* 4 Vet.App. 528 (1993) (*in banc*). Michael J. Hermann appeals the judgment of the Court of Veterans Appeals dismissing his appeal for lack of jurisdiction. That judgment was entered June 2, 1993, 5 Vet.App. 275, pursuant to the court's May 6, 1993 order dismissing the appeal for lack of jurisdiction in light of the decision in *Hamilton, supra. Hermann v. Brown,* 5 Vet.App. 275 (1993). We affirm.

Gershon M. Ratner, National Veterans Legal Services Project, of Washington, DC, argued for claimant-appellant, Hamilton. Of counsel were Ruth Eisenberg and Arnette L. Georges. Glen Patrick McGrath, Lawrence J. Smith & Associates, of New Orleans, LA, was on the brief for claimant-appellants, Hermann.

Martin F. Hockey, Jr., Attorney, Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Of counsel were Donald E. Zeglin and Nicole Sideris, Dept. of Veterans Affairs, Washington, DC.

Before ARCHER, Chief Judge [1], MAYER, Circuit Judge, and PLAGER, Circuit Judge.

PLAGER, Circuit Judge.

These consolidated appeals raise the question whether, for jurisdictional purposes, there can be more than one Notice of Disagreement (NOD) relating to the same claim. Stanley A. Hamilton appeals the judgment of

## BACKGROUND

### 1.

The Veterans Administration, now the Department of Veterans Affairs (DVA or Agency), long utilized a document called the Notice of Disagreement (NOD) as the vehicle by which a veteran, aggrieved by the initial determination of a DVA office, would announce the intention to administratively appeal that initial determination. As 38 U.S.C. § 7105(a) (Supp. IV 1992) [2] provides, "[a]ppellate review will be initiated by a notice of disagreement...." A NOD is defined by DVA regulations as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction [AOJ] and a desire to contest the result...." 38 C.F.R. § 20.201 (1993).[3] An AOJ is defined as the DVA "regional office, medical center, clinic, cemetery, or other Department of Veterans Affairs facility which made the initial determination on a claim...." 38 C.F.R. § 20.3(a).

An administrative appeal proceeds through an elaborate set of steps before ending up in the Board of Veterans' Appeals (BVA or

---

**1.** Chief Judge Archer assumed the office of Chief Judge on March 18, 1994.

**2.** Unless otherwise noted, all citations to title 38 of the United States Code are to Supplement IV, published 1992.

**3.** Unless otherwise noted, all citations to DVA regulations are to the 1993 version of Title 38 C.F.R.

Board) for final disposition. First, the Agency reviews the NOD and attempts to resolve the dispute. *See* 38 U.S.C. § 7105(d)(1). If that is not possible, the Agency issues a "statement of the case" (SOC) to the veteran. *See* 38 U.S.C. § 7105(d)(1)–(3). The SOC essentially sets forth the Agency's legal and factual position in relation to the disagreement. Its function is to give the veteran information with which to evaluate the feasibility of pursuing his claim. As the statute puts it:

> A statement of the case shall include the following:
>
> (A) A summary of the evidence in the case pertinent to the issue or issues with which disagreement has been expressed.
>
> (B) A citation to pertinent laws and regulations and a discussion of how such laws and regulations affect the agency's decision.
>
> (C) The decision on each issue and a summary of the reasons for such decision.

38 U.S.C. § 7105(d)(1); *see also* 38 C.F.R. § 19.29.

Then, assuming the veteran continues to dispute the claim, the veteran perfects the appeal by filing a "substantive appeal." *See* 38 U.S.C. § 7105(a)–(d)(3). Agency regulations define a "substantive appeal" as a "properly completed VA Form 1–9, 'Appeal to Board of Veterans' Appeals,' or correspondence containing the necessary information." 38 C.F.R. § 20.202. Under applicable law, this documentation "should set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case. The benefits sought on appeal must be clearly identified." 38 U.S.C. § 7105(d)(3); *see also* 38 C.F.R. § 20.202. It is not uncommon for the BVA to then remand cases to the AOJ for further findings, and for readjudication of the case. When there is additional development of the record on remand, the Agency will issue a "supplemental statement of the case" (SSOC). *See* 38 C.F.R. § 19.31. The SSOC is essentially an update of the Agency's position in light of the additional development.

Effective September 1, 1989, Congress established the Court of Veterans Appeals to provide for the first time a judicial appeals process to be utilized in veterans benefits matters. *See* § 301(a) of the Veteran's Judicial Review Act (VJRA), Pub.L. No. 100–687, § 301(a), 102 Stat. 4105, 4113–4121 (1988) (codified as amended at 38 U.S.C. § 7251 *et seq.* (1988)). Exclusive but limited appellate jurisdiction to review Court of Veterans Appeals decisions was bestowed upon the Court of Appeals for the Federal Circuit. *Id.*

Congress was concerned that the Court of Veterans Appeals would be overwhelmed with cases already in the pipeline. 134 Cong. Rec. S16650 (daily ed. October 18, 1988) (statement of Sen. Cranston). The DVA was not noted for swift disposition of its administrative appeals, so that a substantial number of stale cases were still working their way through the bureaucracy. *See Prenzler v. Derwinski,* 928 F.2d 392, 393–94 (Fed.Cir. 1991). Accordingly, Congress mandated that only cases "in which a notice of disagreement [has been] filed under section 7105 ... of title 38, United States Code, on or after [November 18, 1988]" would be heard by the Court of Veterans Appeals. *See* Veteran's Judicial Review Act § 402; 38 U.S.C. § 7251 note.

Since that time, a number of pre–1988 cases have arisen in which an initial Agency determination was made adverse to the veteran; the veteran filed a NOD prior to November 18, 1988; the case eventually proceeded through the various review steps and was remanded by the Board to the unit that made the initial decision for further findings. Then, if the veteran was still dissatisfied, the case would work its way back up through the system to the BVA for final disposition. Along the way, the veteran would file one or more written documents objecting to the determination on remand. If, as occurred in a number of cases, these new documents were executed on or after November 18, 1988, the veteran would claim entitlement to be heard before the Court of Veterans Appeals on the theory that there was a post-November 17, 1988 NOD.

In *Whitt v. Derwinsky*, decided by the Court of Veterans Appeals in 1990, the court rejected the argument of the Secretary that the only valid jurisdictional NOD is the first NOD filed in response to the initial AOJ adjudicative determination. 1 Vet.App. 40, 42–43, *in banc review denied*, 1 Vet.App. 94 (1990) (with Steinberg, J., dissenting from denial). The court held that "there can be more than one NOD filed under certain circumstances with respect to the same claim." *Id.* at 42. As a consequence, any document that meets the regulatory definition, i.e., a written communication expressing disagreement with an "adjudicative determination" of the AOJ, was considered valid for purposes of conferring jurisdiction on the court.

In 1992, this court decided *Strott v. Derwinski*, 964 F.2d 1124 (Fed.Cir.1992). In *Strott*, the question was whether any one of two documents executed by Mr. Strott qualified as a post-November 17, 1988 jurisdictional NOD. The first was filed in 1985, and clearly failed the test. The second—a Form 1–9, indicating Strott's dissatisfaction with the regional office's determination on remand from the BVA—was filed in 1989. An appeal was taken to the Court of Veterans Appeals from the final decision of the BVA; the court held that the 1989 document did not qualify as a NOD for several reasons. We affirmed.[4]

Subsequently, the government moved to vacate the decision in *Whitt* on the ground that the facts in *Whitt* were essentially identical to those in *Strott*, and therefore *Strott* decided the *Whitt* matter. This court in a single judge nonprecedential order granted the government's motion, and remanded the case to the Court of Veterans Appeals with instructions to dismiss Whitt's appeal. *Whitt v. Derwinski*, 979 F.2d 215 (Fed.Cir.1992) (Table).

2.

Hamilton served in the United States Army from September 1967 to September 1969. He was stationed in Vietnam from January to September 1969 with the principal duty assignment of small arms repairman in a maintenance battalion assigned to the 1st Infantry Division. In May 1985, he filed a claim with the Manchester, New Hampshire regional office (RO) of the DVA alleging service connected post-traumatic stress disorder (PTSD). In September 1985, the RO denied the claim after concluding that the alleged disability "is the result of the veteran's own misconduct—alcoholism." In April 1986, Hamilton filed a statement seeking to reopen the claim. In May 1986, the RO affirmed its previous denial.

Hamilton then filed a NOD dated June 17, 1986. The RO responded with a SOC dated June 30, 1986. In that document, the Agency concluded that "[s]ervice connection for a nervous condition to include Post–Traumatic Stress Disorder is not warranted." In July 1986, Hamilton perfected an appeal to the Board by filing a Form 1–9 in which he requested an oral hearing.

A hearing was conducted at the RO on September 24, 1986. Hamilton participated as a witness. On February 20, 1987, the Agency issued a SSOC stating it was continuing to deny Hamilton's claim.[5] On June 12, 1987, the Board issued its decision on Hamilton's appeal. In that decision, the Board concluded that "although the veteran's articulation of emotionally disturbed reactions to traumatic events, and in particular the details of those events, was more vague and more limited than one would desire, the requisite number of elements to warrant the diagnosis of post-traumatic stress disorder appeared to be in place." Accordingly, it

---

**4.** As we discuss *infra*, a third document—a September 1989 letter not part of the record before the CVA and raised for the first time at oral argument—was also addressed in the limited context of determining whether a remand was appropriate to give the CVA an opportunity to consider whether the letter was a jurisdictional NOD. In concluding that a remand was unnecessary, we focused on the most obvious defect of

the letter—it was not issued in response to an adjudicative determination of the AOJ. 964 F.2d at 1127.

**5.** That document makes no mention of the September 24, 1987 hearing, and thus it cannot be determined whether it was issued in response to the hearing.

remanded the case with instructions (1) for the Agency to complete Hamilton's file, (2) for Hamilton to be reexamined by two psychiatrists who had not previously examined him, (3) for a "complete current psychiatric diagnosis" of Hamilton to be prepared, and (4) for Hamilton's case to be reevaluated in light of this information. Significantly, the Board also instructed the Agency to return the case to the Board in the event the decision remained adverse to Hamilton.

On remand, the Agency undertook a reevaluation of Hamilton's claim in light of the Board's instructions. In January 1988, it reiterated its denial of Hamilton's claim. In February 1988, it issued another SSOC, to supplement the Agency's position in light of the further developments that had occurred on remand. The SSOC stated that the Agency was continuing to deny Hamilton's claim because the evidence failed to establish the presence of a recognizable "stressor," a force or trigger that "would be expected to evoke significant symptoms in almost all individuals, that is, arising under circumstances such as armed conflict or another life-threatening episode."

Hamilton responded to the SSOC by filing a statement dated March 3, 1988 in which he asserted that the Agency on remand had failed to comply with the Board's instruction that he be evaluated by two psychiatrists who had not previously examined him. According to Hamilton, only one such examination had been conducted. Hamilton also took issue with the Agency's conclusion that a recognizable stressor had not been identified. According to Hamilton, the existence of an identifiable stressor can be assumed from his experience in Vietnam in a "forward infantry unit."

The Board then conducted another hearing in which Hamilton participated as a witness. The Board concluded that additional development of the record was necessary before it could finally dispose of the appeal. Accordingly, in a decision dated December 14, 1988,

it remanded the case back to the Agency with instructions (1) for Hamilton to be reevaluated, preferably by two psychiatrists, but at least by one psychiatrist, who had not previously examined him, (2) for the Agency to readjudicate Hamilton's claim in light of this information, and (3) for the Agency to provide a "definitive diagnosis" to enable the Board "fairly to rule in or rule out the presence of post traumatic stress disorder." Upon completion of these tasks, the Agency was advised

> this claim should be readjudicated by the agency of original jurisdiction. If it remains denied, the veteran and his representative should be furnished with a supplemental statement of the case and given an opportunity to respond thereto. Thereafter, the claims file, including the above requested evidence, should be returned to this Board for further appellate review, if in order. No action is required by the veteran until he receives further notice.

On remand, the Agency arranged for another psychiatric evaluation of Hamilton. The psychiatric report concluded that Hamilton "clearly meets the diagnostic criteria for post-traumatic stress disorder. Specifically there are events and stressors that would be markedly disturbing to almost anyone." Nonetheless, in February 1989, the Agency continued its denial of Hamilton's claim. It then issued a SSOC dated March 6, 1989 explaining that the basis for its continuing denial was the lack of a recognizable stressor.

On March 22, 1989, Hamilton filed a Form 1–9 expressing disagreement with a March 17, 1989 decision of the Agency,[6] and requesting another hearing. Such a hearing was held at the RO on May 16, 1989. Again, Hamilton appeared as a witness.

On August 4, 1989, the DVA officer who presided over the hearing issued an opinion affirming the Agency's denial of Hamilton's claim. The basis for the decision was the lack of objective evidence of a life threatening stressor to support the PTSD diagnosis.

---

6. It is clear to us, and the government has conceded, that Hamilton intended the reference to a

*March 17, 1989* decision to mean the SSOC dated *March 6, 1989.*

Hamilton then filed a statement, dated September 5, 1989, requesting that the Board review the transcript of the hearing as well as the other evidence of record. On February 14, 1990, the Board issued another opinion in connection with Hamilton's claim. After exhaustively reviewing the record that had been developed, the Board first noted the Agency's assertion than an identifiable stressor had not been shown. It concluded that it did not need to question Hamilton's assertions on this point, and proceeded to sustain the denial of Hamilton's claim on another ground. As the Board put it, "we are unable to conclude that a true posttraumatic stress disorder related to military combat has been shown, notwithstanding that he may have some symptoms consistent with a post-traumatic stress disorder."

Hamilton then appealed to the Court of Veterans Appeals. While the appeal was pending, the Secretary of Veterans Affairs revised the provision of its internal procedures manual which governed the evidentiary threshold necessary to find service connection. Accordingly, upon the Secretary's motion, the court, in an opinion dated August 4, 1992, vacated the Board's decision, and remanded the case to the Board to give it an opportunity to reevaluate Hamilton's claim in light of the modified evidentiary threshold adopted by the Agency. *Hamilton v. Derwinski*, 2 Vet.App. 671 (1992).

On August 18, 1992, the Secretary filed a motion seeking to have the Court of Veterans Appeals vacate its August 4, 1992 decision, and to dismiss Hamilton's appeal for lack of jurisdiction in light of this court's opinion in *Strott v. Derwinski*, 964 F.2d 1124 (Fed.Cir. 1992). The Court of Veterans Appeals then consolidated the case with two others in which its jurisdiction was being questioned, and convened an *in banc* panel to resolve a question critical to each: whether there was a NOD filed on or after November 18, 1988 within the meaning of § 402 of the Veteran's Judicial Review Act. As the court put it:

The question presented is whether, in light of the decision of the United States Court of Appeals for the Federal Circuit in *Strott v. Derwinski*, 964 F.2d 1124 (Fed. Cir.1992), and that Court's action in *Whitt v. Derwinski*, 979 F.2d 215 (Fed.Cir.1992) (single-judge order), this Court has jurisdiction over the merits of the instant cases on the basis of a document, purported to be a Notice of Disagreement (NOD), filed subsequently to the original NOD filed in each case. Consideration of this question has prompted the Court en banc to reconsider the basis for its decision in one of its earliest cases, *Whitt v. Derwinski*, 1 Vet. App. 40 (1990), which held that a subsequent NOD could bestow jurisdiction on this Court under section 402 of the Veteran's Judicial Review Act ..., as long as that subsequent NOD was filed "in response to 'an adjudicative determination' made by the regional [Department of Veterans Affairs (formerly Veterans' Administration) (VA)] activity." *Whitt*, 1 Vet.App. at 42.

*Hamilton*, 4 Vet.App. at 530.

In light of the plain language of § 402 of the VJRA, and the statute it references, 38 U.S.C. § 7105, the *in banc* court, with two judges dissenting, concluded that the NOD referred to in § 402 of the VJRA is the NOD which initiates the administrative appeal for a particular claim. 4 Vet.App. at 535–36. Accordingly, it overruled its multiple-NOD holding in *Whitt* in favor of a rule recognizing "only one valid NOD as to a particular claim [which extends] to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." 4 Vet. App. at 538.[7] (Emphasis in original).

The Court of Veterans Appeals then applied this principle to the facts of Hamilton's case. It specifically addressed whether any of the documents filed by Hamilton express-

---

7. Consequently, in a case in which the BVA "remands to an RO for further development and readjudication a claim previously decided by the RO and properly appealed to the BVA ...," 4 Vet.App. at 538, the CVA concluded that an expression of disagreement with the RO's readjudication on remand cannot be a jurisdiction-creating NOD. *Id.*

ing disagreement with any of the DVA's actions on remand could be a jurisdictional NOD. It ultimately concluded that none were

> because the RO's actions on remand related to the original claim which had already been placed in an "appellate" status ... by the June 1986 NOD. Therefore, there was no function that a new NOD could have performed in VA's adjudication process and, consequently, a VJRA § 402 NOD could not have been filed insofar as this Court's jurisdiction is concerned.
>
> *Id.* at 541.

Accordingly, it vacated its August 4, 1992 decision and entered judgment dismissing Hamilton's appeal. *Hamilton v. Brown,* 4 Vet.App. 528 (1993). Hamilton then appealed to this court.

### 3.

Hermann served with the U.S. Army in Vietnam for approximately 15 months as a mechanic on a river squadron boat. In January 1988, he filed a claim for service-connected PTSD. In May 1988, the Agency denied the claim, concluding that PTSD "is not shown by the evidence of record." In September and October 1988, the Agency twice confirmed its previous denial, concluding that additional evidence submitted by Hermann was not "new and material to establish service connection for [PTSD], previously denied." On November 16, 1988, Hermann filed a NOD expressing disagreement with the Agency's decision. In that document, Hermann also requested issuance of a SOC and a hearing. On December 12, 1988, a hearing was conducted at the New Orleans RO in which Hermann participated. The DVA officer who presided over the hearing then issued an opinion dated July 21, 1989. In that opinion, the officer concluded that the evidence of record "does not establish service connection for [PTSD]...." Accordingly, he sustained the denial of Hermann's claim.

Hermann then filed a Form 1–9 dated August 4, 1989, thus perfecting an appeal to

the Board. An oral hearing was conducted, in which Hermann participated as a witness. In a decision dated September 17, 1990, the Board affirmed the denial of Hermann's claim.

Hermann then filed an appeal to the Court of Veterans Appeals. In a decision dated March 4, 1993, the court stayed Hermann's appeal pending the *in banc* decision in *Hamilton.* After a decision was issued in *Hamilton* on April 15, 1993, the stay was lifted, and the appeal proceeded in due course. In a decision dated May 6, 1993, the Court of Veterans Appeals dismissed Hermann's appeal for lack of jurisdiction, concluding that Hermann did not file a post-November 17, 1988 jurisdictional NOD within the meaning of § 402 of the VJRA. *Hermann v. Brown,* 5 Vet.App. 275 (1993). Judgment was entered in accordance with the court's decision on June 2, 1993. Hermann then appealed to this court.

## DISCUSSION

On appeal, our task is limited to reviewing and deciding "any challenge to the validity of any statute or regulation or any interpretation thereof ..., and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). In addition, we are to

> hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied on in the decision of the Court of Veterans Appeals that [we find] to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or
>
> (D) without observance of procedure required by law.

38 U.S.C. § 7292(d)(1).

On appeal, Hamilton states the issues as three. First, whether the Court of Veterans Appeals, in "thoroughly repudiating" the *Whitt* multiple-NOD doctrine, acted contrary to this court's decision in *Strott v. Derwinski*, 964 F.2d 1124 (Fed.Cir.1992). Second, even if the court's repudiation of the multiple-NOD doctrine is not contrary to the *Strott* decision, whether it is still reversible error as contrary to the plain meaning of the relevant statute, § 402 of the VJRA, when interpreted in light of its legislative history. Third, whether the Agency's interpretation of that statute is litigation-induced and thus not entitled to deference.

Hermann raises two issues. First, whether a NOD filed before November 18, 1988 but on file, i.e., pending, as of that date can be a jurisdictional NOD. Second, whether the Court of Veterans Appeals erred in dismissing his appeal for lack of jurisdiction.

We address each of these issues in turn.

### 1.

As an initial matter, we note with disapproval that the Court of Veterans Appeals places considerable weight upon, and discusses at length, the nonprecedential order issued by this court in the aftermath of the *Whitt* case. The matter is also extensively discussed by the parties. We remind counsel and the court that nonprecedential opinions and orders are not citable to this court, they do not represent the considered view of the Federal Circuit regarding aspects of a particular case beyond the decision itself, and they are not intended to convey this court's view of law applicable in other cases. Nonprecedential orders and opinions are used in summary dispositions of cases in which a full precedential opinion is not considered necessary, but something more than a one-sentence Rule 36 [8] affirmance is warranted or needed.

They are nonprecedential for a reason—while the decision itself receives due care, as do all cases before us, the explanation given in the summary disposition does not necessarily contain a full recitation of all the relevant facts and legal authorities. The opinion or order is primarily for the benefit of the parties. It is error to assume that a nonprecedential order or opinion provides support for a particular position or reflects a new or changed view held by this court. Accordingly, in considering the question presented by the Court of Veterans Appeals in this case, we disregard entirely any discussion of the *Whitt* order and its possible meanings.

### 2.

Hamilton argues that the multiple-NOD doctrine of *Whitt*, 1 Vet.App. at 42, retains vitality in the wake of this court's decision in *Strott*. According to Hamilton, the Federal Circuit in *Strott* fully embraced the multiple-NOD doctrine. Thus, according to Hamilton, the Court of Veterans Appeals' *in banc* decision in *Hamilton* repudiating the doctrine is erroneous because it conflicts with binding precedent.

The Secretary, by contrast, asserts that this court in *Strott* did not address the question of whether there can be more than one jurisdiction-creating NOD. Thus, in his view, the Court of Veterans Appeals' repudiation of the *Whitt* multiple-NOD doctrine is fully consistent with *Strott*.

The Secretary is correct. In *Strott*, the specific issue of whether multiple jurisdictional NODs in connection with a single claim were possible was not raised by either party, and was not addressed by this court. The question was put in terms of whether a post-November 17, 1988 jurisdictional NOD had been filed.

In the course of the opinion, we noted that at oral argument Strott had brought to our attention a letter executed in September 1989 in response to a June 1989 hearing held in the regional office. We made clear that

---

**8.** Fed.Cir.R. 36 provides "[i]f a judgment is rendered without an opinion, the clerk shall prepare, sign and enter the judgment following instruction from the court."

the appeal could not turn on the question whether the letter was a jurisdictional NOD since it was not in the record before the Court of Veterans Appeals. However, in the interests of justice, we considered whether the case should be remanded to that court for further development of the record. 964 F.2d at 1127. In that regard, we said "[i]f such a hearing and the subsequent decision of July 17, 1989 qualify as an 'adjudicative determination of an agency of original jurisdiction,' then it would be a jurisdiction-creating NOD." *Id.*

We went on to say that the regional office, when it conducted the June 5, 1989 hearing, was acting in an appellate role rather than "agency of original jurisdiction," and thus that a NOD issued in response to this event could not be jurisdiction-creating. *Id.* at 1127–28. The letter thus had no legal significance. We then noted that the Court of Veterans Appeals' *Whitt* decision, to the extent it suggested otherwise, was overruled. *Id.* at 1128. That was a point which we thought self-evident, but worth stating nevertheless.

Thus, the discussion about the letter was limited to the context of considering whether a remand was appropriate to give the Court of Veterans Appeals an opportunity to determine if the letter was a jurisdictional NOD. We focused on its most obvious defect—the fact that the hearing which prompted it was not an adjudicative determination of an agency of original jurisdiction—to conclude that a remand was unnecessary. There were other reasons for not remanding—the veteran did not include the letter in the record before the Court of Veterans Appeals—and therefore the entire discussion was moot.

Accordingly, we conclude *Strott* does not govern the matter. The Court of Veterans Appeals' repudiation of the *Whitt* multiple-NOD doctrine is fully consistent with *Strott.*

### 3.

Hamilton next asserts that a single-NOD rule is inconsistent with the plain language of

§ 402 of the VJRA when interpreted in light of its legislative history.

The Secretary takes the contrary position. He asserts that a single-NOD rule is supported by, or at least not inconsistent with, the plain language of § 402 of the VJRA when interpreted in light of its legislative history.

■ The Secretary is correct. Section 402 of the VJRA speaks in terms of a notice of disagreement *filed under* 38 U.S.C. § 7105. Section 7105 is entirely devoted to the subject of an administrative appeal to the Board. A notice of disagreement is discussed solely in the context of initiating an appeal to the Board. No other function of a NOD is mentioned.

For example, § 7105(a) provides *"[a]ppellate review will be initiated* by a notice of disagreement...." (Emphasis added). And according to § 7105(b)(1), a "notice of disagreement shall be filed within one year from the date of mailing of notice of the result of *initial review or determination."* Thus, the plain language of the statute supports the conclusion that the NOD referred to in § 402 of the VJRA is one which *initiates appellate review. See Burton v. Derwinski,* 933 F.2d 988, 989 (Fed.Cir.1991) ("[A] notice of disagreement has a specific meaning in the context of these cases: it is a document that initiates an appeal from an agency of original jurisdiction.").

The legislative history of section 402 of the VJRA also supports this conclusion. In 1987–1988, when the issue of judicial review of veterans cases was taken up by Congress, the House bill, H.R. 5288, proposed the creation of an independent court, the Court of Veterans Appeals, to hear such appeals. *See* H.R. 5288, 100th Cong., 2d Sess. (1988). It was proposed that the court would replace the Board. *Id.* § 7. Limited jurisdiction to review Court of Veterans Appeals decisions was to be bestowed upon this court. *Id.* § 5(a). The Senate bill, S. 11, in contrast, proposed the retention of the Board. S. 11, 100th Cong., 1st Sess. (1987). Judicial re-

view of Board decisions was to be provided through the filing of civil actions in the district courts, with appellate review of the decisions of the district courts to be provided by the regional circuit courts of appeals. *Id.* § 302(a).

Both bills contained provisions for determining when a veterans appeal would be subject to the new procedures. The provision in the House bill was § 9. That section provided:

(a) Effective Date.—This Act shall take effect on June 1, 1989.

(b) Applicability to Cases After Date of Enactment.—A person who on or after the date of the enactment of this Act files a notice of disagreement with the Veterans' Administration with respect to a matter is entitled to have the matter determined subject to the provisions of the amendments made by this Act. The Board of Veterans' Appeals may not hear or decide a matter with respect to which a notice of disagreement is filed with the Veterans' Administration on or after the date of the enactment of this Act.

The provision in the Senate bill was § 502. That section provided:

A civil action authorized in subchapter II of chapter 71 of title 38, United States Code (as added by section 302(a) of this Act) may be instituted to review decisions of the Board of Veterans' Appeals rendered on or after April 1, 1987.

Neither bill was enacted into law. Instead, a compromise was reached according to which the Board was retained as a first line appellate body because of its perceived expertise in veterans matters. 134 Cong. Rec. S16638 (daily ed. October 18, 1988) (statement of Sen. Matsunaga). Review of Board decisions would be performed by the Court of Veterans Appeals; limited appellate review of Court of Veterans Appeals decisions would be provided by this court.

Section 402 of the VJRA also emerged from the compromise. That section was taken from and is substantially similar to § 9 of the House bill. 134 Cong.Rec. H10351 (daily ed. October 19, 1988). The most substantial changes made were the deletion of the second sentence of § 9(b) (the sentence prohibiting the Board from hearing any appeals after a certain date), and the addition of the qualifier "filed under section 4005 [now 7105] of title 38, United States Code," after the phrase "notice of disagreement."

The addition of the "filed under" qualifier signifies that Congress intended to incorporate into the statute a limited definition of the phrase "notice of disagreement." This conclusion is supported by the House Report, which characterizes a "notice of disagreement" as a document which initiates an appeal: "[T]he filing of a Notice of Disagreement ... simply states a claimant's intention to appeal...." H.R.Rep. No. 100–963, 100th Cong.2d Sess., pt. 1, at 14 (1988); *see also id.* at 6, 1988 U.S.Code Cong. & Admin.News 5782, 5787, 5796. ("A petitioner would initiate the appellate process by filing a notice of disagreement (NOD) with the VA within 180 days of the mailing of the decision with which disagreement is expressed."). It is also supported by the context in which the phrase "notice of disagreement" first appeared in H.R. 5288. At that time, it was envisaged that appeals would proceed directly to the Court of Veterans Appeals without going through an internal administrative process. The House clearly had in mind a document that would function akin to a notice of appeal. The fact that the "filed under" qualifier was added when the statute was enacted into law indicates that Congress did not want to change that meaning.

Hamilton's point—that the usage of the indefinite article "a" in § 402 of the VJRA, and the plural "notices" in 38 U.S.C. § 7105(b)(2)[9] evinces Congressional intent not to preclude multiple jurisdictional NODs for a single claim—is not persuasive. As the

---

**9.** That section provides "[n]otices of disagreement, and appeals, must be in writing and may be filed by the claimant, the claimant's legal guardian, or such accredited representative, attorney, or authorized agent as may be selected by the claimant or legal guardian.... Not more

Secretary points out, these simply evince Congressional recognition that a NOD is a document which is particular to a claimant.

Hamilton's other point—that the Agency's long-standing definition of a NOD embodied in 38 C.F.R. § 20.201 was incorporated into § 402 of the VJRA—is also not persuasive. For one thing, as we have discussed, the notion that an expansive Agency definition of a NOD was incorporated into § 402 of the VJRA is inconsistent with the plain language of the statute and its legislative history. *See Burton,* 933 F.2d at 989; *cf. Strott,* 964 F.2d at 1126 ("Congress implicitly adopted the definition of a NOD already in place in 38 U.S.C. § 4005 [now § 7105] and 38 C.F.R. § 19.118 (1991).").

For another, we are not at all sure that in 1988, when § 402 of the VJRA was enacted into law, the relevant regulation, 38 C.F.R. § 19.118 (1988) (the predecessor to 38 C.F.R. § 20.201 (1993)), contemplated multiple NODs in connection with a single claim. That regulation defined a NOD as a response to an action by the ***agency of original jurisdiction.*** The meaning of the phrase "agency of original jurisdiction," although not provided by the 1988 regulations, was clear from 38 U.S.C. § 4005(b)(1), the predecessor to 38 U.S.C. § 7105(b)(1) that was in place at the time. According to that statute, the phrase means the unit that made the ***initial determination*** in connection with a claim:

> [A] notice of disagreement shall be filed within one year from the date of mailing of notice of the result of ***initial*** review or determination. Such notice, and appeals, must be in writing and be filed with the activity which entered the determination with which disagreement is expressed (***hereafter referred to as the "agency of original jurisdiction."***). (Emphasis added).

38 U.S.C. § 4005(b)(1) (1988) (now § 7105(b)(1)).

This is the meaning that was eventually incorporated into the regulations. According to 38 C.F.R. § 20.3 (1993), an AOJ is the unit "which made the *initial* determination on a claim." (Emphasis added). *See Prenzler v. Derwinski,* 928 F.2d 392, 394 (Fed.Cir.1991) ("[T]he 'agency of original jurisdiction' is the agency which denied the original claim."). Since there can be only one initial determination in connection with a claim, it is questionable whether the regulation contemplates multiple jurisdictional NODs.

A regulation brought to our attention by the Secretary, 38 C.F.R. § 19.129(c) (1988) (now 38 C.F.R. § 20.302(c) (1993)), is not to the contrary. That regulation provides that in a case in which a SSOC has been issued after the timely filing of a substantive appeal, i.e., a Form 1–9, "the response to [the SSOC] is optional and is not required for the perfection of an appeal unless the [SSOC] covers issues that were not included in the original [SOC]." Thus, in the case in which the SSOC raises new issues, an additional document must be filed to perfect the appeal with respect to these issues. The question is whether this document could be a jurisdictional NOD.

█ We think not. A SSOC, even if it raises new issues in connection with a claim, is simply an ***updated*** statement of the Agency's position in relation to a claim. It is thus not the ***initial*** determination in connection with the claim that is required.

The regulation cited by Hamilton, 38 C.F.R. § 19.182 (1988) [10] (now 38 C.F.R. §§ 19.9, 19.31, and 19.38 (1993)), is also not to the contrary. According to 38 C.F.R. § 19.182(c) (1988) (which, with revisions not

---

than one recognized organization, attorney, or agent will be recognized at any time in the prosecution of a claim."

10. That regulation provides:

(a) *General.* When, during the course of review, it is determined that further evidence or clarification of the evidence or correction of a procedural defect is essential for a proper ap-

pellate decision, the section of the Board shall remand the case to the ***agency of original jurisdiction,*** specifying the further development to be undertaken.

(b) *Review by agency of original jurisdiction.* Where the development results in additional evidence, a [SSOC] will be furnished the appellant ..., and the records will again will reviewed by the ***agency of original jurisdic-***

relevant here, now forms part of 38 C.F.R. § 19.38 (1993)), a case which has been remanded to the unit which made the initial determination is automatically returned to the Board for further processing if full relief is not awarded by the Agency on remand. As the regulation puts it, ":[u]nless the benefits at issue on appeal are awarded upon review by the [AOJ], the records will be returned to the [Board] for completion of appellate review." [11] It is thus apparent that the Agency on remand is acting as an arm of the Board and not as an "agency of original jurisdiction."

Hamilton points to the numerous references to "agency of original jurisdiction" appearing in that regulation, the contrast between that regulation and the regulations discussed in *Strott*, 38 C.F.R. §§ 19.157(b), 19.160(c) (1991), which clearly delineate Agency action conducted on behalf of the Board, and the phrase "completion of appellate review" in 19.182(c). He argues that these items indicate that the Agency's readjudication of a claim on remand is an action by the AOJ.

■ We cannot agree. When the regulation is considered as a whole, it is clear that the Agency, in readjudicating a claim on remand, is acting as an arm of the Board. We have already discussed how, under 19.182(c), a claim is automatically returned to the Board for further processing unless full relief is awarded by the Agency.

The numerous references to "agency of original jurisdiction" signify simply that a remanded case is returned to the unit that made the initial determination in connection with the claim. Perhaps that is because that unit, through its prior experience with the claim, is equipped to dispose of the claim most efficiently. The references do not signify that the unit, in disposing of a claim on remand, is functioning as an AOJ.

The significance of the phrase "completion of appellate review" appearing in 19.182(c) is simply that the Board conducts the function of appellate review; it is not inconsistent with the notion that the Agency on remand is functioning on behalf of the Board, i.e., performing tasks that will facilitate the Board's appellate review.

■ Hamilton's final argument—that the Agency's interpretation of the statute is litigation-induced and thus not entitled to deference—is irrelevant. An agency's interpretation of a statute is only relevant if there is a gap in meaning which the agency was entrusted to administer. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). That is not the case here. We reach our conclusion by construing the relevant statutory provisions, not because the Agency is in agreement.

Hermann's argument—that a NOD filed before November 18, 1988 but on file as of that date is a jurisdiction-creating NOD—is specious and inconsistent with the plain language of the statute.

4.

The final question to be addressed then is whether on the facts presented, Hamilton or Hermann filed a jurisdiction-creating NOD. Hamilton argues that the Form 1–9 he filed on March 22, 1989 in response to the Agency's issuance on March 6, 1989 of a SSOC [12] qualifies as a jurisdiction-creating NOD;

---

*tion. . . .* If the case is remanded to cure a procedural defect, the Board may also require issuance of a [SSOC] to assure full notification to the appellant of the statement of the case.

(c) *Resubmission to Board of Veterans Appeals.* Unless the benefits at issue on appeal are awarded upon review by the *agency of original jurisdiction, the records will be returned to the [Board] for completion of appellate review.* Remanded cases will not be closed for failure to respond to the supplemental statement of the case. (Emphasis added).

**11.** The point is sometimes made in the instructions of the Board. As the Board's December 14, 1988 instructions in Hamilton's case put it: "[T]he claims file, including the above requested evidence, should be returned to this Board for further appellate review. . . ."

**12.** *See* note 6, *supra*.

Hermann asserts that the NOD he filed on November 16, 1988 is a jurisdiction-creating NOD.

 We think not. As we have discussed, a jurisdiction-creating NOD is a document filed on or after November 18, 1988 that initiates appellate review of a claim. Hamilton's Form 1–9 does not qualify because it did not initiate appellate review of his claim. That function was performed by the NOD he filed on June 17, 1986. Hermann's NOD does not qualify because, although it initiated appellate review of his claim, it was filed before November 18, 1988.

## CONCLUSION

For all the foregoing reasons, the Court of Veterans Appeals did not err in dismissing Hamilton's and Hermann's appeals for lack of jurisdiction. Accordingly, the court's judgment in both is *affirmed.*

## COSTS

Each party to bear its own costs.

*AFFIRMED.*