Lahti Patrick KIRWIN, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 92–1238.

United States Court of Veterans Appeals.

Decided May 10, 1995.

Kenneth M. Carpenter was on the pleadings, for the appellant.

Mary Lou Keener, General Counsel, Norman G. Cooper, Assistant General Counsel, R. Randall Campbell, Deputy Assistant General Counsel, and Susan A. Wuchinich were on the brief for the appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Judges.

IVERS, Judge:

Lahti Patrick Kirwin appeals a June 4, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for diverticulosis of the colon, irritable bowel syndrome, temporomandibular joint (TMJ) syndrome, and tinnitus, and reducing a 100% disability rating for service-connected post-traumatic stress disorder (PTSD), effective January 1, 1991. *Lahti P.*

*Kirwin,* BVA 92–13860 (June 24, 1992). In its decision, the Board also awarded a 100% disability rating for service-connected PTSD through December 1990. The Court has jurisdiction over the June 1992 BVA decision pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court affirms in part and vacates in part the June 1992 decision of the BVA and remands the matter for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Marine Corps from October 17, 1969, to August 6, 1971, and from October 14, 1971, to May 20, 1978, to include a tour in Vietnam for three months in 1972 and in Thailand for seven months in 1972. Record (R.) at 25–27, 40. In November 1982, following participation in a Vietnam Stress Treatment Program administered by VA, the appellant was diagnosed with PTSD. R. at 40. The appellant related several combat experiences involving being blown through the wall of a building by enemy rockets and being caught in firefights with the enemy. *Ibid.* He also related that he was beaten during basic training and that he was forced to renounce his conscientious objector beliefs as a member of the Seventh Day Adventist Church. *Ibid.*

On January 31, 1983, a VA regional office (RO) denied service connection for stomach ulcers and PTSD. R. at 53. According to a February 1983 letter from a VA psychiatrist, the appellant was given a primary diagnosis of PTSD and was found to have been totally disabled and unable to return to work since July 1982. R. at 57. In an April 1983 VA Social and Industrial Survey report, a VA examiner similarly concluded that "this veteran is seriously limited in income[,] ... having to depend upon his parents, and his unemployment compensation to pay the bills. Socially, he has only a few close relationships, and even fewer that have lasted for any length of time. I believe that the veteran is severely impaired socially." R. at 62. On June 21, 1983, a confirmed rating decision continued the denial of service connection for PTSD. R. at 66.

Subsequent letters from various sources, including the appellant's treating VA psychologist, Dr. Tom Patterson, indicate that the appellant was not employable in 1984. R. at 137–38 (Dr. Patterson's letters), 227–30 (award of disability benefits from Social Security Administration (SSA)), 234 (VA hospital summary). On February 20, 1985, the Board remanded the appellant's claim for further development (R. at 236), and on May 10, 1985, the RO continued the denial of service connection for PTSD. R. at 244. However, in a January 22, 1986, memorandum, the Director of VA's Mental Health and Behavioral Sciences Service opined that the appellant's conscientious objector beliefs and combatant status had resulted in the development of PTSD. R. at 255. On June 3, 1986, the Board awarded service connection for PTSD. R. at 267. The RO awarded a temporary 100% rating for a period of hospitalization beginning February 28, 1982 (*see* 38 C.F.R. § 4.29 (1994)) and awarded a noncompensable rating effective April 1, 1983. R. at 271.

Following a request that the rating be increased, the RO awarded a 10% rating effective April 1, 1983, a 100% rating under 38 C.F.R. § 4.29 for a period of hospitalization beginning on May 30, 1984, and a 30% rating effective February 1, 1985. R. at 297. On January 28, 1987, a confirmed rating decision denied an increased evaluation for the service-connected PTSD. R. at 342.

A May 1987 VA Social and Industrial Survey report concluded that the appellant was moderately impaired socially and severely impaired industrially. R. at 359. Indeed, the appellant was hospitalized for PTSD treatment from June 10 to July 10, 1987. R. at 362–63, 365, 380. According to a July 1987 statement, the appellant's treating VA psychologist, Dr. Patterson, indicated that various other physical symptoms were appearing because of the PTSD, including heart palpitations, gastric upsets, headaches, and other "physical kinds of concerns." R. at 394. He concluded that the appellant's PTSD was severe, that it prevented him from obtaining or retaining employment, and that the 30% disability rating was inadequate. R. at 395, 410–11.

On July 12, 1987, the appellant was readmitted to a VA hospital because of complaints of anxiety. R. at 380. The August 3, 1987, VA hospital discharge summary indicated diagnoses of PTSD and colon spasms and stated that the appellant was taking medication for the colon spasms and stomach cramps, "which are usually related to stress." *Ibid.* On August 12, 1987, the BVA issued a decision increasing the rating to 30% disabling for the period between April 1, 1983, and May 29, 1984, but denying a rating higher than 30% disabling for any other period of time at issue. R. at 376.

In an August 21, 1987, occupational assessment report prepared at the request of the appellant's attorney, an evaluator with the Menninger Foundation Return to Work Center found the appellant to be unemployable. R. at 426.

An RO rating decision from September 3, 1987, again awarded the appellant a temporary 100% rating under 38 C.F.R. § 4.29 for a period of hospitalization effective June 10, 1987. R. at 427, 438. Following the periods of hospitalization, the ratings were again reduced to 30%. *Ibid.*

On October 7, 1987, the appellant's attorney wrote to the RO, seeking to "reopen" his claim and to obtain an increased disability rating for the service-connected PTSD. R. at 433. On December 21, 1987, a rating decision by the RO awarded a temporary 100% rating under 38 C.F.R. § 4.29 for a period of hospitalization during July and August of 1987 and maintained the 30% rating for the period after September 1, 1987. R. at 438. On January 27, 1988, an RO rating decision awarded a temporary 100% rating under 38 C.F.R. § 4.29 for a period of hospitalization commencing November 20, 1987. R. at 441. On February 29, 1988, the appellant filed a Notice of Disagreement (NOD) with regard to the December 1987 RO rating decision. R. at 449. On April 14, 1988, the appellant's attorney corresponded with the RO in an effort to determine the status of the claim for a total disability rating. R. at 471. The appellant's attorney followed this letter with a second letter, dated July 1, 1988. R. at 480. On July 20, 1988, the RO issued a rating decision indicating that the temporary

total disability rating had been reduced to 30% effective April 1, 1988, then awarding an additional temporary 100% rating for another period of hospitalization commencing on April 5, 1988, and again restoring the 30% rating effective July 1, 1988. R. at 482.

On September 26, 1988, a personal hearing was held at the RO, at which the appellant's attorney argued for service connection for tinnitus, TMJ syndrome, colon spasms, and an increased rating for service-connected PTSD. R. at 507–10, 522, 526. On January 25, 1989, the RO denied service connection for tinnitus, TMJ syndrome, and diverticulosis of the colon. R. at 618. In addition, the RO increased the rating for PTSD to 50% because of a liberalizing law, effective July 1, 1988. *Ibid.* The appellant was informed of the rating increase in a Supplemental Statement of the Case (SSOC) dated January 31, 1989. R. at 624–25. On February 3, 1989, the appellant's attorney sent a letter to the RO inquiring whether the 50% rating was indeed the correct rating assigned and indicating that the appellant had not received any notification other than the SSOC. R. at 627. On November 3, 1989, following the exchange of additional correspondence, the appellant's attorney sent a letter to the RO expressing disagreement with the rating increase. R. at 630.

On May 8, 1990, the Board Chairman sent a letter to the appellant's attorney stating that the current appeal would not proceed until the appellant had clarified whether he would be seeking reconsideration of the Board's August 1987 decision. R. at 634. The appellant requested an extension of time to file the motion for reconsideration (R. at 635), which the Board Chairman granted (R. at 636), and the appellant filed the motion on July 13, 1990 (R. at 639–49). On November 9, 1990, the Board Chairman denied reconsideration. R. at 650. In the letter notifying the appellant of the denial, however, the Chairman informed him that he could continue to pursue his current appeal. *Ibid.*

On November 28, 1990, the Board held a hearing. R. at 706. On June 3, 1991, the Board remanded the appellant's claims in order to obtain a clarification as to whether the appellant was seeking service connection

for diverticulosis of the colon, irritable bowel syndrome, or both. R. at 699–700. On June 27, 1991, the appellant's attorney responded, indicating the claim was for irritable bowel syndrome. R. at 704. On June 18, 1991, acting pursuant to the remand from the Board, the RO denied service connection for tinnitus, TMJ syndrome, diverticulosis of the colon, and irritable bowel syndrome and continued the 50% rating for the service-connected PTSD. R. at 743–44. On July 31, 1991, the appellant's attorney sent a letter disagreeing with the RO decision. R. at 740.

On June 4, 1992, the Board denied service connection for diverticulosis, irritable bowel syndrome, TMJ syndrome, and tinnitus. *Kirwin*, BVA 92–13860, at 12. The Board also awarded a total disability rating based on individual unemployability under 38 C.F.R. § 4.16 for PTSD. *Id.*, BVA 92–13860, at 11–12. In that same decision, the Board also reduced the total disability rating to 70% for PTSD effective January 1, 1991. *Ibid.*

## II. ANALYSIS

### A. *Claims Reviewed for Well–Groundedness*

■ Initially, two of the appellant's claims present questions regarding whether they are well grounded. A claimant for benefits administered by VA has the burden of submitting evidence sufficient to justify a belief that the claim is well grounded. 38 U.S.C. § 5107; *see Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). "A well[-]grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [38 U.S.C. § 5107]." *Murphy*, 1 Vet.App. at 81. Where the determinative issue involves medical causation, competent medical evidence that a claim is "plausible" is required in order for the claim to be well grounded. *See Grivois v. Brown*, 6 Vet.App. 136, 140 (1994); *Grottveit v. Brown*, 5 Vet. App. 91, 93 (1993). Lay testimony is insufficient to fulfill this burden because lay persons generally lack the expertise necessary to opine on matters involving medical knowledge. *Grivois*, 6 Vet.App. at 140; *Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992).

The Court reviews de novo whether a claim is well grounded. *See King v. Brown*, 5 Vet.App. 19 (1993).

### 1. *Diverticulosis of the Colon*

■ With respect to diverticulosis of the colon, although not at issue in the Board's June 1992 decision, we hold that the appellant's claim for secondary service connection was well grounded. ("Diverticulosis" is "an intestinal disorder characterized by the presence of many diverticula"; a "diverticulum" is "an abnormal pouch or sac opening from a hollow organ (as the intestine or bladder." WEBSTER'S MEDICAL DESK DICTIONARY 188 (1986) [hereinafter WEBSTER'S].) The competent evidence (i.e., aside from the appellant's or his representative's own statements regarding medical causation, *see Grivois*, 6 Vet. App. at 140; *Espiritu*, 2 Vet.App. at 494) submitted by the appellant is sufficient to render the claim well grounded.

The most significant piece of evidence submitted in connection with this claim is a May 1985 medical record prepared by Dr. Joseph D. Sargent, a private physician with the Menninger Foundation Return to Work Center. In March 1985, Dr. Sargent noted that the appellant had presented complaints of intermittent cramping and diarrhea and scheduled the appellant for further examinations to determine whether these complaints were due to physical explanations. R. at 242; *see also* R. at 239 (Dr. Sargent noted further complaints of intermittent cramping and diarrhea). Commenting on the examinations, Dr. Sargent wrote:

> [A sigmoidoscopy] was completely negative. Check of the laboratory work reveals many beta strep on the stool culture, modest elevation of the serum uric acid, 5% EOS and generalized diverticulosis of the descending and sigmoid colon. I do not feel that any of these explain the patient's symptoms at the present time. I feel that he is suffering from an irritable colon and this, plus his other symptoms, are related to [PTSD].

R. at 243.

Dr. Sargent's statements regarding the appellant's "other symptoms" can be read to

include diverticulosis of the colon because he referred to diverticulosis of the colon in the same note just prior to the reference to "his other symptoms." R. at 243. Even if Dr. Sargent's letter is ambiguous as to whether he intended to refer to this condition as a *symptom* of PTSD, we resolve such ambiguity in favor of the appellant and find that the claim is well grounded.

■ Having determined that the appellant's claim for secondary service connection for diverticulosis was well grounded, we also hold that the Board committed error in its decision by failing to provide the appellant with notice of its intention to use a medical treatise as well as an opportunity to respond thereto. *See Thurber v. Brown,* 5 Vet.App. 119, 126 (1993). The Board's reliance on the medical treatise was for more than purely definitional purposes since the Board used the treatise to support the finding that psychological disturbances and patterns of colon motility are not related. *Kirwin,* BVA 92–13860, at 7. Therefore, the claim must be remanded for compliance with *Thurber* and for further adjudication as warranted in light of the well-groundedness of the claim.

## 2. *Tinnitus*

The appellant's claim for secondary service connection for tinnitus does not achieve well-grounded status. The appellant presented complaints of tinnitus in June 1987 (R. at 351) and was diagnosed with tinnitus in July 1987 (R. at 365).

■ The best evidence in support of the tinnitus claim is Dr. Patterson's July 1987 letter, quoted above, which related that the appellant's PTSD had resulted in numerous "physical kinds of concerns." Dr. Patterson's letter, however, does not refer to tinnitus as one of those "physical kinds of concerns," and we may not presume a particular reading of this phrase.

■ The other evidence submitted by the appellant includes statements under oath that VA physicians had told him that his tinnitus was related to PTSD. R. at 713–14. In a recent case, the Court addressed whether a layperson's recitation of what he had allegedly been told by physicians was suffi-

cient to render a claim well grounded. In *Robinette v. Brown,* No. 93–985, slip op. at 11–12 (Sept. 12, 1994), *reconsideration granted on other grounds,* 8 Vet.App. 69 (1994), the Court held that a claimant's statement about what a physician has said about a condition is insufficient to render a claim well grounded. *See also Warren v. Brown,* 6 Vet.App. 4, 6 (1993) (Court held that, in context of resubmitted claim, claimant's statement as to what physician told him was insufficient to establish medical diagnosis). Therefore, in keeping with *Robinette,* we hold that the appellant's accounts of statements made to him by physicians could not render the claim well grounded.

■ In *Grottveit,* 5 Vet.App. at 93, the Court addressed the situation where the Board had adjudicated a claim that was not well grounded and held that the proper course of action was to vacate the Board's decision under the authority of 38 U.S.C. § 7261(a)(3)(C) and to remand the matter under the authority of 38 U.S.C. § 7252(a) with directions to vacate the RO decision. We will apply that remedy to this matter and will vacate the Board's June 1992 decision which denied service connection for tinnitus with directions for the Board to vacate the underlying RO decision.

## B. Claims Reviewed Under "Clearly Erroneous" Standard

■ Once a claim passes the well-groundedness hurdle and the Board adjudicates that claim, the Court reviews the Board's findings of fact regarding the claim under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Harder v. Brown,* 5 Vet.App. 183, 187 (1993); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Ibid.*

In this case, the appellant is claiming service connection for TMJ syndrome and irritable bowel syndrome secondary to service-connected PTSD. Under 38 C.F.R.

§ 3.310(a) (1994), secondary service connection is available for a disability

> which is proximately due to or the result of a service-connected disease or injury.... When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition.

*See Harder,* 5 Vet.App. at 187; *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990).

### 1. *TMJ Syndrome*

■ On June 7, 1988, a request was made for a VA dental evaluation of the appellant's TMJ syndrome. R. at 570. (TMJ syndrome relates to the joint between the temporal bone and the mandible. WEBSTER'S at 706.) The ensuing consultation report prepared by a VA dentist stated: "[Patient] is 30% [service-connected] for PTSD. Is this condition a result of his [service-connected] disability[?] In my opinion Mr. Kirwin has a prematurity of occlusions on the upper right. This could cause spasms of the muscles of mastication." *Ibid.*

On a June 30, 1988, VA consultation sheet, the appellant's treating psychologist, Dr. Patterson, requested an evaluation from the Chief of the Dental Service at the Colmery–O'Neill VAMC. R. at 571. The reason given for this request was for "[b]ruxism evaluation and treatment (night guard related to facial and forehead stress and mandibular tension in PTSD veteran. Jaws hurt and bad headaches constantly). The bruxism appears etiologically related to [service-connected] PTSD." *Ibid.* In response to this request, the ensuing consultation report stated: "Patient has TMJ dysfunction as a result of anterior collapse." *Ibid.*

The VA consultation reports provide a plausible basis for the Board's denial of secondary service connection for TMJ syndrome. We will, therefore, affirm the Board's decision on this claim.

### 2. *Irritable Bowel Syndrome*

■ The record is replete with references to symptoms of irritable bowel syndrome, including intermittent cramping and diarrhea, and to statements from various physicians indicating a relationship between the appellant's PTSD and irritable bowel syndrome. R. at 239, 242–43, 251, 351, 365, 380, 584, 587. (Irritable bowel syndrome is "a functional commonly psychosomatic disorder of the colon characterized by the secretion and passage of large amounts of mucus, by constipation alternating with diarrhea, and by cramping abdominal pain" and is also commonly referred to as spastic colon. WEBSTER'S at 353.)

In its June 1992 decision, the Board quoted a medical treatise for the proposition that there was no correlation between PTSD and irritable bowel syndrome. *Kirwin,* BVA 92–13860, at 7. The Board concluded: "Neither a somatoform disorder nor psychological factors affecting physical condition have been diagnosed. Under these circumstances, we find the negative evidence, including the lack of diagnosis of a psychiatrically induced bowel disorder, to outweigh the rather conclusory opinions to the contrary." *Ibid.* As the Secretary concedes, the Board failed to give the appellant notice of the use and intended reliance on the medical treatise and an opportunity to respond thereto. *See Thurber,* 5 Vet.App. at 126. Therefore, we will remand this claim for compliance with the principles enunciated in *Thurber.*

### C. *PTSD*

We cannot, however, review the appellant's claim for an increased disability rating for PTSD.

Under section 402 of the Veteran's Judicial Review Act (VJRA), Pub.L. No. 100–687, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 Note), this Court has jurisdiction to review a case in which an NOD has been filed on or after November 18, 1988. In *Hamilton v. Brown,* 4 Vet.App. 528, 538 (1993) (en banc), *affirmed,* 39 F.3d 1574 (Fed.Cir.1994), the Court held that "[t]here can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." Upon its review of *Hamilton,* the United States Court of Appeals for the Federal Circuit held that "a jurisdiction-creating NOD is a document filed on or after November 18, 1988[,] that initi-

ates appellate review of a claim." *Id.*, 39 F.3d at 1586.

Subsequent to the Federal Circuit's opinion in *Hamilton*, this Court considered another case involving whether a particular NOD conferred jurisdiction upon this Court. In *West v. Brown*, 7 Vet.App. 329, 332 (1995) (en banc), the Court stated:

A successful claimant has not had his case fully adjudicated until there is a decision as to all essential elements, i.e., status, disability, service connection, rating, and when in question, effective date.... The NOD as to that original adjudication initiated the appeal that ultimately required further adjudication. The fact remains that these further adjudications of the case are inextricably part of the case originally filed and are extensions of the appeal that was filed.

In another case, the Court stated:

In the instant case, the veteran's February 1988 NOD placed on appeal the issue of his entitlement to a rating higher than 10% for his service-connected PTSD. Pursuant to that appeal, the BVA was required to consider his entitlement with respect to all available disability ratings for PTSD. *See* 38 C.F.R. § 3.103(a); *Shoemaker* [*v. Derwinski*, 3 Vet.App. 248, 253 (1992) ]. VA's schedule for rating disabilities provides for 0%, 10%, 30%, 50%, 70%, and 100% ratings for PTSD. 38 C.F.R. § 4.132, Diagnostic Code 9411 (1992). Therefore, the September 1988 RO decision awarding an increase from 10% to 30% in the veteran's PTSD rating did not fully resolve the administrative claim on appeal to the Board. Rather, the appeal initiated by the February 1988 NOD remained pending for disposition by the BVA as to the unresolved question of entitlement to a rating higher than 30%.

*AB v. Brown*, 6 Vet.App. 35, 38–39 (1993).

In the instant appeal, as the appellant concedes in his reply brief, we do not have jurisdiction to review the claim for an increased disability rating since the appellant's NOD with respect to this claim was filed on February 29, 1988. R. at 449. Therefore, we will dismiss that portion of the appellant's appeal regarding the claim for an increased disability rating for PTSD.

The more difficult question involves the Board's June 1992 decision which, having assigned a 100% disability rating for the appellant's PTSD, then *reduced* the rating to 70% in that same decision. In its decision, the Board did not reference 38 C.F.R. § 3.343(c), which provides as follows:

(c) *Individual unemployability.* (1) In reducing a rating of 100 percent service-connected disability based on individual unemployability, the provisions of [38 C.F.R.] § 3.105(e) are for application but caution must be exercised in such a determination that actual employability is established by clear and convincing evidence. When in such a case the veteran is undergoing vocational rehabilitation, education or training, the rating will not be reduced by reason thereof unless there is received evidence of marked improvement or recovery in physical or mental conditions or of employment progress, income earned, and prospects of economic rehabilitation, which demonstrates affirmatively the veteran's capacity to pursue the vocation or occupation for which the training is intended to qualify him or her, or unless the physical or mental demands of the course are obviously incompatible with total disability. Neither participation in, nor the receipt of remuneration as a result of participation in, a therapeutic or rehabilitation activity under 38 U.S.C. [§] 1718 shall be considered evidence of employability.

(2) If a veteran with a total disability rating for compensation purposes based on individual unemployability begins to engage in a substantially gainful occup[a]tion during the period beginning after January 1, 1985, the veteran's rating may not be reduced solely on the basis of having secured and followed such substantially gainful occupation unless the veteran maintains the occupation for a period of 12 consecutive months. For purposes of this subparagraph, temporary interruptions in employment which are of short duration shall not be considered breaks in otherwise continuous employment.

38 C.F.R. § 3.343(c) (1994).

Although the appellant's total disability rating was in effect from February 1988

through December 1990, *see Kirwin,* BVA 92–13860, at 11–12, the regulation at issue here does not require that such a rating have been in effect for any particular length of time in order for this reduction regulation to be applicable. *See Ternus v. Brown,* 6 Vet. App. 370, 376 (1994) (RO's failure to apply reduction regulation for total disability ratings assigned on schedular basis was clear and unmistakable error); *Hohol v. Derwinski,* 2 Vet.App. 169, 172 (1992) (38 C.F.R. § 3.343(a) provides that once veteran is rated totally disabled on schedular basis, such rating will not be reduced absent showing of material improvement). *But see Dofflemyer v. Derwinski,* 2 Vet.App. 277, 280 (1992) (read *together,* 38 C.F.R. § 3.343(a) and 38 C.F.R. § 3.344(a) provide that total disability rating that has existed for five or more years cannot be reduced on any one examination); *Collier v. Derwinski,* 2 Vet.App. 247, 249–50 (1992) (in holding that requirements for decrease in disability ratings that had been in effect for long periods of time were more stringent than requirements for initial awards or ratings increases, Court analyzed 38 C.F.R. § 3.343(a) and 38 C.F.R. § 3.344). In essence, then, the Board cut off the appellant's rights as delineated by the regulation. Therefore, the Board should have considered 38 C.F.R. § 3.343(c) in connection with its decision to reduce the appellant's total disability rating based on individual unemployability.

■ Despite these errors, which we have described above solely for purposes of our jurisdictional analysis, we are precluded from reviewing the Board's decision on the PTSD claim because there is no jurisdiction-conferring NOD relating to this claim. As the Court once stated, the fact that the PTSD claim and the other claims as to which there are jurisdiction-conferring NODs "were fortuitously consolidated into one decision cannot give jurisdictional life to adjudications that Congress has forbidden this Court from considering." *Tucker v. Derwinski,* 2 Vet. App. 201, 202 (1992).

■ Nevertheless, in connection with the remand to the Board for readjudication of the irritable bowel syndrome and diverticulosis claims, the appellant could raise to the Secretary the issue of whether the Board's reduction of the total disability rating based on individual unemployability without the proper adherence to the regulatory framework trumped his rights and deprived him of the opportunity to respond to the reduction. *See Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). Although we lack jurisdiction to review the matter or to take further action that may have been appropriate by virtue of the Court's organic legislation, no such bar exists to prevent the appellant from raising the issue in connection with the portions of the Board's decision that are being remanded.

■ In addition, the appellant argues that prior RO and BVA decisions were predicated on clear and unmistakable error (CUE). *But see Smith v. Brown,* 35 F.3d 1516, 1527 (Fed.Cir.1994) (CUE review authority under 38 C.F.R. § 3.105(a) (1994) applies only to review of RO decisions, not BVA decisions); *but see also* 38 C.F.R. § 20.1104 (1994) (when determination of agency of original jurisdiction is affirmed by Board, such determination is subsumed within Board decision); *Talbert v. Brown,* 7 Vet.App. 352, 355 (1995) (same). The appellant, however, concedes that he did not raise the issue with the requisite specificity prior to the Board's June 1992 decision, *see Fugo v. Brown,* 6 Vet.App. 40, 44–45 (1993); *Russell v. Principi,* 3 Vet.App. 310, 315 (1992) (en banc), and asks that the Court remand the matter in order to provide him with an opportunity to raise the issue with specificity. As the appellant has stated, however, the issue of CUE in prior VA decisions was never brought to VA's attention with the requisite specificity, and a remand at this time would not be appropriate.

## III. CONCLUSION

Accordingly, upon consideration of the record, appellant's brief, and the Secretary's brief, we DISMISS in part the appellant's appeal, AFFIRM in part and VACATE in part the June 1992 decision of the BVA, and

REMAND the matter for adjudication consistent with this opinion.