122 F.3d 1030
 Jesus A. BARRERA, Claimant-Appellant,
and
Peter F. Johnson, Claimant-Appellant,
v.
Hershel W. GOBER, Acting Secretary of Veterans Affairs,
Respondent-Appellee.
 Nos. 95-7045, 95-7057.
 United States Court of Appeals,
Federal Circuit.
 Aug. 8, 1997.
 
 Kenneth M. Carpenter, Carpenter, Chartered, Topeka, KS, argued for claimant-appellant Jesus A. Barrera. Of counsel were Richard Showalter and Kelly C. Brown.
 Michael E. Wildhaber, Wildhaber & Associates, Washington, DC, argued for claimant-appellant Peter F. Johnson. With him on the brief were Rachel A. Putterman. Of counsel were William F. Russo and Mary J. Schoelen, Veterans of America, Inc.
 John C. Erickson, III, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for respondent-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director.
 Before PLAGER, CLEVENGER, and RADER, Circuit Judges.
 Opinion for the court filed by Circuit Judge CLEVENGER. Concurring opinion filed by Circuit Judge PLAGER.
 CLEVENGER, Circuit Judge.
 
 
 1
 Jesus A. Barrera and Peter F. Johnson appeal from the orders of the Court of Veterans Appeals dismissing for want of jurisdiction their appeals to that court. See Barrera v. Brown, No. 90-1496, 1995 WL 57790 (Vet.App. Feb. 3, 1995); Johnson v. Brown, No. 94-1108, 1995 WL 285389 (Vet.App. May 4, 1995). For the reasons set forth in our recent decision in Grantham v. Brown, No. 96-7011, 114 F.3d 1156, 1997 WL 313167 (Fed.Cir. June 11, 1997), as briefly explained below, we hold that the Court of Veterans Appeals erred in its dismissal orders.
 
 
 2
 * These two cases involve claims by veterans for benefits associated with injuries incurred in connection with their military service. The jurisdiction of the Court of Veterans Appeals is restricted to claims on which a notice of disagreement (NOD) has been filed after the effective date of the Veterans Judicial Review Act (Act). See 38 U.S.C. § 7251 note (1994).
 
 
 3
 Mr. Barrera filed a NOD before the effective date of the Act, challenging an administrative determination that his injury was not service connected. When he later prevailed on that issue, he challenged the disability rating that was assigned to his condition by filing another NOD after the effective date of the Act.
 
 
 4
 Mr. Johnson filed a pre-Act NOD challenging the disability rating assigned to his service connected condition. When he later prevailed on that issue, he filed a post-Act NOD challenging the effective date that was assigned to his entitlements.
 
 
 5
 The Court of Veterans Appeals held that it lacked jurisdiction to hear Mr. Barrera's appeal on the issue of his disability rating, and Mr. Johnson's appeal on the effective date issue relating to his claim, even though each veteran asserted the court's jurisdiction based on a post-Act NOD. The court's holding followed and applied its pronouncement in West v. Brown, 7 Vet.App. 329 (1995) (en banc), that it lacks jurisdiction over cases involving issues related to post-Act NODs if the appealing veteran had filed a pre-Act NOD with respect to some other issue in the same overall claim for relief. Under the law of West v. Brown, there can be but one NOD in any case on which the court's jurisdiction can be based, and the jurisdiction-conferring NOD must be the first one in time filed by the veteran in connection with his overall claim for relief.
 
 II
 
 6
 This court recently held in Grantham v. Brown that a veteran's overall claim, or case, for benefits is comprised of separate issues, and that the Court of Veterans Appeals has jurisdiction to consider an appeal concerning one or more of those issues, provided a NOD has been filed after the effective date of the Veterans Judicial Review Act with regard to the particular issue. Thus, our precedent recognizes that multiple NODs may be filed by a veteran concerning the claim for benefits. The NOD which must serve to confer jurisdiction on the Court of Veterans Appeals is the first one filed with respect to a given issue, i.e., the NOD which initiates judicial review of the issue on which the veteran has received an unfavorable administrative determination. That a pre-Act NOD may have been filed, thus initiating appellate review with respect to a particular issue, does not defeat jurisdiction in the Court of Veterans Appeals over a different issue on which a NOD has been filed after the effective date of the Act. In a nutshell, Grantham overrules West v. Brown.
 
 III
 
 7
 Mr. Barrera's pre-Act NOD concerning service connection for his claim thus does not deprive the Court of Veterans Appeals of jurisdiction over his post-Act NOD concerning disability rating. Mr. Johnson's pre-Act NOD concerning disability rating likewise does not deprive the Court of Veterans Appeals of jurisdiction over his post-Act NOD concerning the effective date.
 
 
 8
 The law as stated in Grantham controls the outcome of these two cases and requires summary reversal in these two cases.*
 
 
 9
 REVERSED AND REMANDED.
 
 
 10
 PLAGER, Circuit Judge, concurring.
 
 
 11
 These cases were presented to us as test cases, and we were advised that a number of other cases raising the same issue were being held pending the outcome here. The brief panel opinion states and reaches the correct result, but, beyond the reference to this court's recent Grantham opinion, fails adequately to explain why. Grantham also reached the correct result, though as the concurring opinion there demonstrates, without having fully explained the underlying rationale of the decision. Because the issue here is one of exceptional importance to the veterans' community, as well as to the courts and boards involved, and because the specific facts of the cases before us illustrate both the complexities and the application of the rule here announced, I believe a more complete treatment of the cases is called for.
 
 
 12
 In addition, the question largely revolves around the meaning to be attributed to this court's decision in the 1994 case of Hamilton v. Brown, 39 F.3d 1574 (Fed.Cir.1994). As one of the three judges on that panel (along with the author of the concurring opinion in Grantham ), and as the authoring judge in Hamilton, I will attempt to make clear the scope of Hamilton, to the extent it was not clear previously, and why that decision was not intended to and does not foreclose the result reached here.
 
 
 13
 I need not detail the basic structure under the statutes and regulations by which a veteran pursues an appeal to the Court of Veterans Appeals. That structure, and the history of the veterans affairs statutes that enlightens the structure, is discussed at some length in the Hamilton opinion. The reader unfamiliar with the structure, and particularly with the role of the document called the Notice of Disagreement ("NOD"), might wish to review that discussion.
 
 Mr. Barrera
 
 14
 The first appellant, Mr. Barrera, is a veteran of the United States Navy. He served from April 24, 1984 until January 18, 1985. At some point, which is not apparent from the current record, he applied to a Veterans Administration regional office, which became for his case the agency of original jurisdiction ("AOJ"), for compensation for an acquired psychiatric disorder. The AOJ denied Mr. Barrera's claim on the ground that Mr. Barrera's symptoms were not service-connected. Mr. Barrera then appealed this adverse decision from the AOJ to the Board of Veterans' Appeals ("the Board") by filing a NOD with the AOJ. The precise date of the filing of that NOD is not known. What is known, however, is that the NOD was filed prior to November 18, 1988.[1]
 
 
 15
 On June 30, 1988, the Board remanded the case to the AOJ for further development of the issue of service connection. On remand, the AOJ issued a rating decision, dated February 15, 1989, granting for the first time service connection for bipolar disorder and assigned a thirty percent disability rating, effective January 19, 1985. This was also the first time that a disability rating and an effective date had been assigned since a finding of service connection is a predicate for considering percent disability or effective date.
 
 
 16
 On April 6, 1989, Mr. Barrera filed a form entitled "Statement in Support of Claim" challenging the AOJ rating decision. In his statement, Mr. Barrera argued that based on evidence from two independent mental health centers he was entitled to a 100% disability rating. In response, the AOJ treated this statement as a NOD and issued a Statement of the Case ("SOC"). See 38 U.S.C. § 7105(d)(1). The AOJ further requested that Mr. Barrera file a VA Form 1-9 in order to perfect his appeal to the Board. See 38 C.F.R. § 20.202. On May 15, 1989, Mr. Barrera completed the required VA Form 1-9 and thereby perfected his appeal challenging the disability rating. The Board subsequently denied Mr. Barrera's appeal for an increase in disability rating.
 
 
 17
 On December 4, 1990, Mr. Barrera timely appealed the Board's decision to the Court of Veterans Appeals.[2] In a decision dated October 21, 1993, the Court of Veterans Appeals dismissed Mr. Barrera's appeal on the ground that the Court of Veterans Appeals lacked jurisdiction because his pre-November 18, 1988 NOD controlled for purposes of establishing jurisdiction. Mr. Barrera filed a motion with the Court of Veterans Appeals for reconsideration on October 29, 1993. The Court of Veterans Appeals granted the motion and stayed the court's prior order pending the outcome of the Court of Veterans Appeals' disposition of West v. Brown, 7 Vet.App. 329 (1995) (in banc). Following the issuance of West, the Court of Veterans Appeals dismissed Mr. Barrera's appeal for lack of jurisdiction.
 
 Mr. Johnson
 
 18
 Mr. Johnson is also a veteran of the United States Navy, having served in the Navy from 1966 until 1969, including a tour of duty in Vietnam. Since 1981, he has received partial disability benefits for service-connected Post Traumatic Stress Disorder ("PTSD"). In response to a request by Mr. Johnson, on June 21, 1988, the AOJ in his case issued a rating decision denying an increase in Mr. Johnson's disability rating. The AOJ concluded that "[n]o change is warranted in the 50% evaluation for [PTSD]." In a letter dated June 27, 1988, the AOJ informed Mr. Johnson that "[w]e cannot grant your claim for the 100 percent compensation rate due to individual unemployability."
 
 
 19
 After receiving the letter, Mr. Johnson replied by letter on July 11, 1988 that he did not request a disability rating of 100%. Instead, he argued that he was "entitled to a 90% compensation rate." The AOJ treated the July 11 letter as a NOD and accordingly issued a SOC. Mr. Johnson continued to press his case for an increase in his disability rating in a letter sent to the AOJ on January 5, 1989 responsive to the AOJ's SOC. The AOJ accepted this letter in lieu of the standard VA Form 1-9 needed to perfect his appeal to the Board.
 
 
 20
 The Board remanded the case back to the AOJ on March 28, 1991. On remand, the AOJ issued a rating decision that increased Mr. Johnson's disability rating to 100%, effective October 7, 1991. The effective date of October 7, 1991 was apparently chosen to correspond with the date on which Mr. Johnson was admitted to the VAMC Northampton Hospital, which ultimately issued a report that substantiated his claim for an increase in disability rating. This was the first time that Mr. Johnson was informed of the effective date of his 100% disability rating.
 
 
 21
 A letter dated February 3, 1992 informed Mr. Johnson of his increase in disability rating from 50% to 100%, as well as the effective date of October 7, 1991.[3] Because, in the words of the AOJ, they had "not made the increase retroactive to [his] initial date of claim," they provided Mr. Johnson with a supplemental SOC ("SSOC"). Mr. Johnson then sent a letter dated February 26, 1992 informing the AOJ that he desired to "appeal the date of 10/7/91 as the effective date of [his] disability." He argued instead that the effective date of his 100% disability should be January 1988.
 
 
 22
 Again the matter went before the Board, and the Board again remanded the matter to the AOJ. On remand, the AOJ issued a "Confirmed Rating Decision" dated March 29, 1993 that affirmed the AOJ's previous denial of an earlier effective date. Mr. Johnson was informed of this decision by letter dated April 3, 1993. Along with the April 3, 1993 letter, the AOJ issued another SSOC. Mr. Johnson appealed this determination to the Board. This time the Board concluded that "[t]he criteria for an effective date of September 12, 1990, for the assignment of a 100 percent schedular evaluation for PTSD are met," and a new effective date of September 12, 1990, vice the previous October 7, 1991 date, was established.
 
 
 23
 Mr. Johnson appealed the Board's decision establishing an effective date of September 12, 1990 to the Court of Veterans Appeals. On May 4, 1995, the Court of Veterans Appeals dismissed the appeal for lack of jurisdiction. Relying on its in banc decision in West, the Court of Veterans Appeals concluded that "[t]he NOD filed in July 1988 initiated the appeal in this matter and all subsequent adjudications of this claim, including the rating and the effective date elements, [which] were part of the case to which the July 1988 NOD applied."
 
 The Issue
 
 24
 The issue presented is, with regard to any particular issue in a case, is the jurisdictional NOD the first-filed in the case, or is it the first-filed that addresses the particular issue? Stated another way, can the Court of Veterans Appeals take jurisdiction over any issue in an appeal stemming from a claimant's case if the first-filed NOD in the case was filed before November 18, 1988? A review of the history of the creation of the Court of Veterans Appeals and its jurisdictional statute may be useful.
 
 Discussion
 
 25
 On January 6, 1987, Senator Cranston introduced Senate Bill S. 11 in order to provide judicial review of Board decisions. At that time veterans were unable to obtain judicial review of decisions of the Board of Veterans' Appeals. Senator Cranston's bill provided for review of both questions of fact regarding individual claims for benefits as well as review of agency rules. The system Senator Cranston proposed differs substantially from the end result. Senate Bill S. 11 vested the district courts with direct review of "final decisions of the Administrator adverse to a claimant in a matter involving a claim for benefits under any law administered by the Veterans' Administration." S. 11, 100th Cong. § 302 (1987). While not directly challenging current Board practices, Senator Cranston remarked that "the VA is a very large and complex Federal agency, and unfair results do occur." 133 Cong. Rec. S223 (1987). The bill provided a stringent standard of review of facts that allowed fact findings of the Board to be overturned only when "such finding is so utterly lacking in a rational basis in the evidence that a manifest and grievous injustice would result if such finding were not set aside." S. 11, 100th Cong. § 302 (1987). Providing judicial review of facts under this deferential standard, according to Senator Cranston, would "afford[ ] an opportunity to correct truly egregious decisions on fact questions." 133 Cong. Rec. S224 (1987).
 
 
 26
 Senator Cranston's bill brought a swift response from his colleagues in the Senate. The following session of the same Congress, Senator Murkowski introduced Senate Bill S. 2292 that provided for review of VA rules, but more importantly for the present case, did not include a comparable provision to S. 11 to allow for judicial review of decisions in individual claims. S. 2292, 100th Cong. (1988). In his remarks accompanying S. 2292, Senator Murkowski distinguished his bill from Senator Cranston's as follows: "I strongly believe that the passage of my bill would result in a similar degree of benefit for our Nation's veterans and their dependents, while avoiding the very high costs that the changes in the system for adjudicated veterans' benefits called for by S. 11 would likely bring about." 134 Cong. Rec. S4189 (1988).
 
 
 27
 It is clear that the added costs spoken of by Senator Murkowski were the potential costs of litigation brought on by "the on-slaught of veterans' claims into Federal district courts." Id. at S4190. Senator Murkowski was also concerned that the attorneys' fees provision of S. 11 would turn the Veterans' Administration into an adversarial agency. According to Senator Murkowski:
 
 
 28
 Claims for veterans' benefits have traditionally been handled within the VA on a nonadversarial basis; it is felt in many quarters that the injection of attorneys with their wholly legitimate adversarial approach would change that, and not for the better.
 
 
 29
 Id. This view was shared by many veterans' groups who ultimately came out in support of S. 2292 over S. 11.
 
 
 30
 On the House side a completely different solution was brewing. That solution much more closely resembles the final result. The House proposed the creation of an Article I court named the Court of Veterans Appeals. H.R. 5288, 100th Cong., § 5 (Sept. 14, 1988). The House bill would have eliminated the Board of Veterans' Appeals and resurrected it in the form of the Court of Veterans Appeals. Id. at § 7; H.R.Rep. No. 100-963, pt. 1, at 5 (1988). Any case pending before the Board as of the effective date of the legislation was to be transferred to the Court of Veterans Appeals along with all the "assets [and] liabilities" of the Board. Id. Thus, under the House version, the Board would cease to exist. Very limited review could be had in this court, and factual findings would be virtually unreviewable. Id. at § 5 ("The Court of Appeals may not review the facts of the appeal or the application of any law or regulation to those facts unless there is presented a constitutional issue.").
 
 
 31
 The language in the bill relating to jurisdiction of the new Court of Veterans Appeals largely tracked that of the existing statute relating to Board jurisdiction. In both, a "notice of disagreement" was required to initiate appellate review. Both required the agency of original jurisdiction to prepare a "statement of the case" in response to the notice of disagreement. The claimant was then required to "perfect an appeal" by filing a paper with the Court of Veterans Appeals, as he was required to do to perfect an appeal to the Board. See H.R.Rep. No. 100-963, pt. 1, at 6 (1988) ("The procedure for filing an appeal called for in the reported bill would be identical in most major respects with the procedure presently used by the Veterans' Administration and the Board of Veterans' Appeals."); compare H.R. 5288, 100th Cong., § 5 (Sept. 14, 1988) with 38 U.S.C. § 4005 (1982 Supp. V 1987).
 
 
 32
 The main difference between the newly proposed Court of Veterans Appeals and the Board was that the Court of Veterans Appeals would have greater independence from the VA than did the Board. Most notably, the judges would be "appointed by the President, by and with the consent of the Senate." H.R. 5288, 100th Cong., § 5. As further described by Representative Montgomery, the Court of Veterans Appeals "would not be bound by the decisions of the administrator, VA regulations, or general counsel opinions." Congressional Record--House, at H9257 (October 3, 1988).
 
 
 33
 Not all notice of disagreements, however, initiated review in the Court of Veterans Appeals--only those filed after the effective date of the bill. Section 9 of the House version provided:
 
 
 34
 A person who on or after the date of the enactment of this Act files a notice of disagreement with the Veterans' Administration with respect to a matter is entitled to have the matter determined subject to the provisions of the amendments made by this Act. The Board of Veterans' Appeals may not hear or decide a matter with respect to which a notice of disagreement is filed with the Veterans' Administration on or after the date of the enactment of this Act.
 
 
 35
 H.R. 5288, 100th Cong., § 9 (Sept. 14, 1988). The House Committee on Veterans' Affairs, which authored the bill, gave the following explanation for this provision:
 
 
 36
 The committee believes that these provisions will enable appellants to pursue their appeals without disruption or delay and the Board of Veterans' Appeals will not be encouraged to summarily dispose of any such appeals prior to such date to avoid the effects of the Act, nor will the Court [of Veterans' Appeals] or the VA be overrun with new appeals which have been held back by claimants who desire to have their appeals determined in accordance with the new provisions.
 
 
 37
 H.R.Rep. No. 100-963, pt. 1, at 39 (1988).
 
 
 38
 After intensive negotiations, the two houses reached a compromise. The compromise legislation would create an Article I court--the Court of Veterans Appeals--as provided in the House version. But rather than scrap the Board, as proposed by the House, the Board would be retained, albeit not in its present form. Instead, the Board would gain more independence from the VA. The Court of Veterans Appeals would then have jurisdiction over decisions from the Board. This compromise achieved the dual goals of providing judicial review of VA decisions while at the same time maintaining a non-adversarial relationship between the VA, the Board, and the veterans. This compromise became the law. See VJRA.
 
 
 39
 The jurisdictional NOD provision for appeals to the new Court of Veterans Appeals took the form of:
 
 
 40
 Chapter 72 of title 38, United States Code, as added by section 301 [creating the Court of Veterans Appeals], shall apply with respect to any case in which a notice of disagreement is filed under section 4005 of title 38, United States Code, on or after the date of the enactment of this Act.
 
 
 41
 VJRA § 402.
 
 
 42
 This language is close to, though not precisely that of, § 9 of H.R. 5288. It would appear that § 9 of H.R. 5288 was intended to operate in substantially the same manner for conferring appellate jurisdiction on the Court of Veterans Appeals as existed in the Board. Thus, if a NOD filed before the effective date of the Act would have conferred jurisdiction on the Board, then that same NOD, if filed after the effective date, should confer jurisdiction on the proposed Court of Veterans Appeals. Such an interpretation satisfies the two Congressional objectives--discouraging summary disposal of any pending claims before the Board, and avoiding swamping the new Court of Veterans Appeals with old appeals.
 
 
 43
 Thus, one way of addressing the issue is to ask whether Mr. Barrera's and Mr. Johnson's post-VJRA NODs would have conferred jurisdiction on the Board had they been filed before the effective date of the Act, November 18, 1988; that is, could an appeal to the Board be viewed as case-specific or issue specific. Prior to the VJRA, as well as since, appellate review was initiated by filing a NOD. See 38 U.S.C. § 4005 (1982 Supp. V 1987). Under the regulations, a NOD was defined as "[a] written communication from a claimant ... expressing dissatisfaction or disagreement with an adjudicative determination of an agency of original jurisdiction." 38 C.F.R. § 19.118 (1988) (emphasis added). "[A]djudicative determination" was not defined in the VA regulations. However, the regulation setting forth the requirements of the statement of the case, which is prepared in response to the NOD, sheds some light on this phrase.
 
 
 44
 The purpose of the statement of the case was to "provide the appellant notice of those facts and applicable laws and regulations upon which the agency of original jurisdiction based its determination of the issue or issues." 38 C.F.R. § 19.120 (1988) (emphasis added). That regulation further required the statement of the case to include a "summary of the evidence in the case relating to the issue or issues with which the appellant ... has expressed disagreement." Id. (emphasis added). Thus, the regulation clearly equates "determination of the issue or issues" to "adjudicative determination." This is further supported by the use of the definite article "the" in section 19.120, which logically refers back to the indefinite article "an" in section 19.118. Therefore, an appeal initiated by filing a NOD relates to a specific "issue or issues." The VJRA did not change this. See VJRA § 206; 38 C.F.R. § 20.201.
 
 
 45
 The question then is, what "issue or issues" may a claimant appeal. Fortunately, the Court of Veterans Appeals has already tilled this ground. An application for disability compensation contains five necessary elements: "(1) the veteran's status, (2) existence of a disability, (3) service connection of that disability, (4) degree of disability, and, when in question, (5) effective date." West v. Brown, 7 Vet.App. 329, 332 (1995) (in banc ). These are the "issue or issues" over which an appellant expresses disagreement by filing a NOD. Therefore it is one or more of these issues that are appealed to the Board, and ultimately to the Court of Veterans Appeals if the NOD is a jurisdiction-conferring NOD filed after November 17, 1988.
 
 
 46
 Any appeal to the Board may involve one or more of these issues. Often, the AOJ does not decide or determine all of these issues at once. This procedure makes administrative sense. If a claimant cannot prove service connection, for example, there is no reason for the AOJ to reach the issue of degree of disability, as in the case of Mr. Barrera. However, this piecemeal disposition has the unfortunate side effect of creating the possibility of multiple NODs. For example, a claimant might file a document challenging the AOJ service connection determination. The AOJ would then prepare a statement of the case, the claimant would perfect the appeal by filing a VA Form 1-9, and the appeal would proceed to the Board.
 
 
 47
 No one disputes that this initial document, if filed after the effective date of the VJRA, would confer jurisdiction on the Court of Veterans Appeals, if it should come to that. The problem would arise if the Board remands to the AOJ and on remand the AOJ makes an affirmative service connection determination. The AOJ then, for the first time, must address the other issues in the claimant's case. The question is whether a subsequent document filed in response to an initial determination of these remaining issues can confer jurisdiction on the Court of Veterans Appeals. The answer is yes.
 
 
 48
 As mentioned earlier, this is not the first time that this court has expounded on the import of § 402 of the VJRA. In Hamilton v. Brown, 39 F.3d 1574 (Fed.Cir.1994), we were faced with a case involving multiple potential NODs. Hamilton filed a claim for service connected PTSD in May 1985 with a regional office, his AOJ. That claim was denied in September 1985 for lack of service connection. Hamilton filed a NOD dated June 17, 1986, prior to the effective date of the VJRA, and subsequently perfected his appeal to the Board. The Board remanded the case to the AOJ for further development of the issue of service connection. On remand, the Agency reiterated its denial and issued a supplemental statement of the case. See 38 C.F.R. § 19.122. Hamilton responded by filing a statement dated March 3, 1988 in which he alleged that the AOJ failed to follow the Board's remand instructions. After a second hearing at the Board, the Board remanded to the AOJ again. The Agency continued its denial of Hamilton's claim on the ground that there was a lack of evidence of a recognizable PTSD trigger.
 
 
 49
 On March 22, 1989, Hamilton filed a Form 1-9 expressing disagreement with the Agency's determination that there was no service connection. The DVA then issued an opinion affirming the Agency's determination. On reconsideration, the Board sustained the Agency's original decision. As the Board put it, "we are unable to conclude that a true [PTSD] related to military combat has been shown." Hamilton, 39 F.3d at 1579.
 
 
 50
 Hamilton then appealed to the Court of Veterans Appeals. While the appeal was pending, the Secretary of Veterans' Affairs revised the internal procedural manual that governed the evidentiary requirements necessary to establish service connection. The Court of Veterans Appeals, responsive to the Secretary's motion, vacated the Board's decision, and remanded the case to the Board to reconsider Hamilton's claim in light of the revised manual. After further consideration, the Secretary moved the Court of Veterans Appeals to vacate its own decision on the ground that the Court of Veterans Appeals lacked jurisdiction over Hamilton's appeal. In response to this motion, the Court of Veterans Appeals concluded that none of Hamilton's post-VJRA documents were conferring NODs under the VJRA. Accordingly, the Court of Veterans Appeals vacated its prior decision and dismissed Hamilton's appeal. Hamilton, 39 F.3d at 1580. We affirmed. Id. at 1586.
 
 
 51
 Since it was Hamilton's June 17, 1986 NOD that initiated appellate review of his claim of service connection, we concluded that the later documents did not initiate appellate review of that issue. Id. In Hamilton, we had the problem of multiple NODs dealing with the same issue in the case. In the case before us, we have the problem of multiple NODs, but addressed to different issues. In Hamilton we used the term "claim" in describing the requirement for a single jurisdiction granting NOD, without differentiating between "claim" as "case" and "claim" as "issue," since it was unnecessary to the decision.
 
 
 52
 Thus, the holding of Hamilton is that there can be only one NOD for any given issue, regardless of the number of remands from or to the Board for further development of that issue. Once a NOD has been filed challenging an initial determination of an AOJ on a given issue, subsequent documents filed by the claimant challenging further decisions on that issue are not jurisdiction-conferring NODs. Id. We stressed in Hamilton that the talisman of a jurisdiction-conferring NOD is whether the document 'initiated' appellate review with respect to the matter before the court. Id. at 1582 ("Thus, the plain language of the statute supports the conclusion that the NOD referred to in § 402 of the VJRA is one which initiates appellate review.") (citing Burton v. Derwinski, 933 F.2d 988, 989 (Fed.Cir.1991)). The decision in Hamilton is fully consistent with the position the court takes today. See also, Ephraim v. Brown, 82 F.3d 399 (Fed.Cir.1996) (post-Hamilton decision holding that a new NOD, related to a claim based on the diagnosis of a condition that was not known to be present at the time of a previous NOD, was jurisdiction granting).
 
 
 53
 A jurisdiction-conferring NOD is one that "initiates" an appeal of an issue. 38 U.S.C. § 7104; Hamilton, 39 F.3d at 1582. If the issue has been previously appealed to the Board, then a subsequent document expressing disagreement over the redetermination of that issue, usually on remand, cannot be and is not a jurisdiction-conferring NOD because it does not "initiate" appellate review of that issue. Id. at 1584. On the other hand, if a document expresses disagreement with an initial determination of an issue by the AOJ, on remand or otherwise, then that document can be a jurisdiction-conferring NOD because it initiates appellate review of that issue.
 
 
 54
 Accordingly, the court today correctly holds that a jurisdiction-conferring NOD, for purposes of the VJRA, is a document filed with an AOJ after November 17, 1988 expressing disagreement with an initial determination by an AOJ of one of the issues that comprise a claim. To the extent West is to the contrary, it is obviously no longer good law. The language of the statute, the legislative history, our precedent, and the policies surrounding the administration of Veterans' benefits all support this conclusion.
 
 
 55
 Having thus decided the requirements for a jurisdiction-conferring NOD, the cases at hand are readily decided. Both sides agree that Mr. Barrera filed a pre-VJRA NOD challenging the issue of service connection that initiated an appeal to the Board. On remand from that appeal, the AOJ granted service connection and assigned an initial disability rating and effective date. Disability rating and effective date had previously been unadjudicated. On April 6, 1989, Mr. Barrera filed a document challenging the AOJ rating decision, arguing that he was entitled to a 100% disability rating. The AOJ treated this document as a NOD and accordingly issued a SOC. The AOJ further requested that Mr. Barrera file a VA Form 1-9 in order to perfect his appeal to the Board. On May 15, 1989, Mr. Barrera completed the requested VA form and thereby perfected his appeal challenging the disability rating. Mr. Barrera's April 6, 1989 document was a jurisdiction-conferring NOD because it was a written document filed after November 17, 1988 expressing disagreement with an initial determination of one of the issues of his claim, i.e., disability rating. Thus, the Court of Veterans Appeals had jurisdiction over Mr. Barrera's appeal.
 
 
 56
 Mr. Johnson's situation is somewhat more complicated than Mr. Barrera's because of the fact that Mr. Johnson was already receiving benefits. We nonetheless reach the same conclusion. The AOJ's letter dated June 21, 1988, denied Mr. Johnson an increase in his disability rating. The letter did not address a new effective date because his benefits remained the same. Similarly, the AOJ's letter dated June 27, 1988 confirmed the prior denial of an increase in disability rating but did not mention a new effective date. The subsequent correspondence between the two confirms that the disagreement centered solely on the issue of disability rating.
 
 
 57
 On remand from the Board, the AOJ issued a rating decision that increased Mr. Johnson's disability rating to 100%, effective October 7, 1991. This date was not the date of his initial claim. This was the first time that Mr. Johnson was informed of the effective date of his new disability rating. Mr. Johnson's letter dated February 26, 1992 expressed disagreement with "the effective date of my disability." In his letter he argued that the effective date of his 100% disability should be January 1988. This letter was a jurisdiction-conferring NOD for purposes of the VJRA because it was a written document filed after November 17, 1988 expressing disagreement with an initial determination of one of the issues of his claim, i.e., effective date. Accordingly, the Court of Veterans Appeals had jurisdiction over Mr. Johnson's appeal and erred by dismissing it.
 
 Conclusion
 
 58
 Congress had many options in deciding which, if any, cases pending in the VA pipeline could ultimately reach the Court of Veterans Appeals. For example, the VJRA could have said that only claims filed with an AOJ after the effective date of the Act could be appealed to the Court of Veterans Appeals. Congress did not choose that option. Alternatively, Congress could have said that the Court of Veterans Appeals will have jurisdiction over all cases pending with the Board. It eschewed that option as well. Instead Congress linked the right to appellate review to the filing of a NOD after the effective date. This was a compromise between two extremes. It allowed a steady stream of pending claims to reach the Court of Veterans Appeals while not opening the floodgates. The interpretation the court places on the statute is responsive to that compromise.
 
 
 59
 It has been almost ten years since Congress created the Court of Veterans Appeals, and established the NOD as the jurisdiction-granting determinant. In time, this issue will disappear from the law as all cases and their NODs will become post-1988 matters. Until then, we must keep in mind the purpose behind the creation and maintenance of our Veterans system. As aptly stated by Abraham Lincoln and inscribed on the wall of the Department of Veterans' Affairs building, the overriding purpose of the Veterans' laws is "to care for him who shall have borne the battle and for his widow and his orphan." This purpose pervades the governing law as well as the legislative history of the VJRA. Therefore, when construing ambiguities in the Act, we should err, if we err at all, on the side of protecting a veteran's right to the judicial review Congress has mandated.
 
 
 
 *
 Appeals in Dippel v. Gober, No. 96-7040, 121 F.3d 727, Holland v. Gober, No. 97-7045, 1997 WL 468286, and Mercado v. Gober, No. 96-7048, 1997 WL 575835, were stayed pending disposition of Barrera and Johnson. Subsequent to the issuance of Grantham, the court has summarily reversed the decisions in Dippel (on July 31, 1997) and in Holland (on July 29, 1997) on the law stated in Grantham. An order has been issued in Mercado, granting the appellant until August 8, 1997 to show cause why the appeal should not be summarily reversed under Grantham. The court has thus already elected to employ Grantham as the lead case, and we simply follow that lead
 
 
 [1]
 The record before the Court of Veterans Appeals did not contain some of the original documents regarding Mr. Barrera's claim and appeal to the Board. Accordingly, some of the procedural history of Mr. Barrera's claim is derived from statements in decisions by the Board and the Court of Veterans Appeals, rather than from source documents. The absence of the source documents does not affect any issue material to Mr. Barrera's appeal
 
 
 [2]
 Although Mr. Barrera filed his notice of appeal with the Court of Veterans Appeals more than 120 days from the Board's decision, the Court of Veterans Appeals considered the appeal timely filed because the Board decision was mailed to the wrong address. See 38 U.S.C. § 4066(a)
 
 
 [3]
 The AOJ also sent a second letter dated February 7, 1992 to Mr. Johnson informing him of the concomitant increase in compensation due to his increased disability. That letter erroneously lists the effective date as "12-01-91."