Citation Nr: 1508848 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 09-10 355 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to a rating in excess of 20 percent for degenerative joint disease of the left ankle (hereinafter, "left ankle disability").

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due to the service-connected left ankle disability.

3. Entitlement to an increased rating for limitation of flexion with residuals, left femur fracture, currently evaluated as 20 percent disabling.

4. Entitlement to an increased rating for limitation of extension with residuals, left femur fracture, currently evaluated as 20 percent disabling.

5. Entitlement to an increased rating for left thigh residuals of left femur fracture, currently evaluated as 10 percent disabling.

6. Entitlement to a (TDIU) based on all service-connected disabilities.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

L. Reeder, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1979 to January 1983.

This matter comes before the Board of Veterans' Appeals (BVA or Board) on appeal from a January 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO), which continued a previously assigned 20 percent rating for degenerative joint disease of the left ankle.

In January 2012, the Veteran testified at a Video Conference hearing before the undersigned Veterans Law Judge. A transcript of the hearing is of record.

In April 2012, the Board remanded the claim for further development. 

In December 2013, the Board issued a decision denying the Veteran's claim of entitlement to an increased rating for a left ankle disability. The Veteran subsequently appealed that decision to the United States Court of Appeals for Veterans Claims (Court). In January 2015, the Court granted a Joint Motion for Remand in which the parties moved the Court to vacate the Board's decision and return the issue to the Board for further consideration.

The Board notes the Veteran filed a notice of disagreement with the September 2014 rating decision. However, as the Court's remand of the Board's 2013 decision placed the issue of the evaluation assigned to the left ankle disability back into the Board's jurisdiction, that issue is being decided by the Board, notwithstanding the new notice of disagreement filed with the September 2014 rating decision as it pertains to the claim for an increased rating for the left ankle disability. "There can be only one valid [notice of disagreement] as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a final RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." Hamilton v. Brown, 4 Vet. App. 528, 538 (1993) aff'd, 39 F.3d 1574, 1582-85 (Fed.Cir.1994); see also Anderson v. Principi, 18 Vet. App. 371 (2004). In short, the September 2014 rating decision is now simply a continuation of the appeal for an increased rating of left ankle disability arising from the January 2008 rating decision. 

The Board notes that additional evidence relevant to the left ankle claim, including a VA examination report, was added to the claims file after issuance of the last supplemental statement of the case. However, the additional evidence was, in fact, considered by the RO in a September 2014 rating decision. As the evidence was clearly considered by the RO in the first instance, a remand of the claim solely to transpose the information from the September 2014 rating decision into the format of a supplemental statement of the case would serve only to delay a decision of this claim on appeal, and would serve no useful purpose. Accordingly, the Board will proceed with adjudication of the claim. See Bernard v. Brown, 4 Vet. App. 384 (1993).

In light of the Joint Motion, the Board finds that the evidence raises a claim for a TDIU due to a left ankle disability, and such claim has been included on the title page of this decision, pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009).

For the reasons explained below, the issues of increased ratings for limitation of flexion from left femur fracture, limitation of extension from left femur fracture, and left thigh impairment, as well as entitlement to a TDIU due to all service-connected disabilities, are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required on his part.


FINDINGS OF FACT

1. The Veteran's left ankle disability has been manifested by pain and marked limitation of motion throughout the appeal period, but has not been productive of ankylosis or malunion of the tibia and fibula.

2. The Veteran's service-connected left ankle disability does not prevent him from obtaining and maintaining substantially gainful employment.


CONCLUSIONS OF LAW

1. The criteria for a disability rating higher than 20 percent for a left ankle disability have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§3.321(b), 4.71a, Diagnostic Code 5010-5271 (2014).

2. The requirements for establishing entitlement to a TDIU due to the service-connected left ankle disability are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.15, 4.16, 4.18, 4.19 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002)) redefined VA's duty to notify and assist a claimant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2014).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2014). Compliant notice was provided in a September 2007 letter. 

In any event, neither the Veteran nor his representative has alleged or demonstrated any prejudice with regard to the content or timing of the notice, to include when the case was on appeal to the Court. See Shinseki v. Sanders, 129 S.Ct. 1696 (2009 (reversing prior cases law imposing a presumption of prejudice on any notice deficiency and clarifying that the burden of showing harmful or prejudicial error normally falls on the party attacking the agency's determination). See also Mayfield v. Nicholson, 444 F.3d 1328, 1333-34 (Fed. Cir. 2006). 

The VA has also fulfilled its duty to assist the Veteran in making reasonable efforts to identify and obtain relevant records in support of the Veteran's claim and to provide a VA examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c)(4)(i) (2014). In this case, the VA obtained service treatment records (STRs), VA treatment records, Social Security Administration records, and VA examination reports.

The Veteran was also afforded a hearing before a Veterans Law Judge (VLJ). In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the officer who chairs a hearing explain the issues and suggest the submission of evidence that may have been overlooked. Here, the VLJ identified the issue to the Veteran, and the VLJ and the Veteran's representative asked questions concerning symptomatology related to his claim. The Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), to include when the case was on appeal to the Court, nor has he identified any prejudice in the conduct of the hearing. The hearing focused on the elements necessary to substantiate the claim, and the Veteran provided testimony relevant to those elements. As such, the Board finds that no further action pursuant to Bryant is necessary, and the Veteran is not prejudiced by a decision at this time.

Finally, the Board notes that the Veteran's increased rating claim was remanded by the Board in April 2012 for additional development, to include obtaining VA treatment records and providing a VA examination. These directives have been accomplished. See Stegall v. West, 11 Vet. App. 268 (1998).

Based on a review of the claims file, the Board finds that there is no indication in the record that any additional evidence relevant to the issue to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Therefore, the Board finds that the duty to notify and duty to assist have been satisfied and will proceed to the merits of the issues on appeal.

II. Analysis

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). When there is an approximate balance 
of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent 
the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found-a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. § 4.40 (2014); see also 38 C.F.R. §§ 4.45 (2014). Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Moreover, where a maximum rating for limitation of motion is already assigned, there can be no additional disability due to pain. See Johnston v. Brown, 10 Vet. App. 80, 85 (1997).

Service connection for degenerative joint disease of the Veteran's left ankle was established in a November 1998 rating decision and assigned a 10 percent rating under 38 C.F.R. § 4.71a, Diagnostic Code 5010-5271. The Veteran's disability rating was subsequently increased to 20 percent in October 2001 and, in February 2007, he filed the instant claim for a rating in excess of 20 percent.

Under Diagnostic Code 5010, arthritis due to trauma will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010. 

Diagnostic Code 5271, limited motion of the ankle, assigns a 10 percent rating for moderate limitation of ankle motion and a 20 percent rating for marked limitation. 

Words such as "moderate" and "marked" are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. 

Having carefully considered the Veteran's contentions in light of the evidence of record and the applicable law, the Board finds that his left ankle disability is appropriately evaluated as 20 percent disabling, the maximum evaluation available under Diagnostic Code 5271 for limitation of motion of the ankle.

In order to warrant a rating greater than 20 percent for his left ankle disability, the evidence must show ankylosis. See 38 C.F.R. § 4.71a, Diagnostic Code 5270. However, the medical evidence of record does not indicate that the Veteran has ankylosis of his left ankle. January 2008, May 2012, and September 2014 VA examiners all reported that ankylosis of the left ankle was not demonstrated, and the accompanying physical examinations revealed some motion of the ankle, with no additional limitation of motion after repetitive motion. The Veteran's treatment records also do not document ankylosis of the left ankle.

The Board has considered whether other diagnostic codes relevant to the Veteran's left ankle disability could result in a higher rating. However, the competent medical evidence of record does not show that the Veteran has malunion or nonunion of the tibia or fibula such that Diagnostic Code 5262 would be applicable. See 38 C.F.R. § 4.71a, Diagnostic Codes 5262 (2014). 

The Board has also considered the provisions in DeLuca v. Brown, 8 Vet. App. 202 (1995), regarding pain and functional loss when evaluating limitation of motion. It acknowledges the Veteran's statements regarding the severity of his disability and the difficulties he experiences when he is performing certain activities, when determining what disability ratings are appropriate. Specifically, it acknowledges his subjective reports of severe, constant pain of 10/10 that worsens with certain movements, his reports of popping, locking, swelling, weakness, and stiffness in the ankle, and his reports that those symptoms affect his ability to walk, especially on uneven surfaces, stand, perform certain movements, and sit in one position for an extended period of time. The Board also acknowledges that the Veteran uses an ankle brace, and that he walks with a cane. However, the Veteran is already assigned the maximum evaluation of 20 percent based on limitation of motion under Diagnostic Code 5271, and a higher rating for limitation of motion based on pain and functional impairment cannot be awarded. See Johnston, 10 Vet. App. at 85. The Board further notes that the Veteran has not, in fact, asserted that he is unable to move his left ankle and, again, the medical evidence of record consistently documents some ankle movement.

In sum, the symptomatology noted in the medical and lay evidence, which does not include evidence of ankylosis, has been adequately addressed by the 20 percent evaluation already assigned under Diagnostic Code 5271, and does not more nearly approximate the criteria for a higher schedular rating at any time during the appeal period. See Hart, supra. Thus, the Board concludes that the medical findings on examination are of greater probative value than the Veteran's allegations regarding the severity of his left ankle disability, and finds that the weight of the evidence is against a schedular rating higher than 20 percent during the course of the Veteran's claim.

The Board has also considered whether referral for extraschedular consideration is warranted for the time period on appeal. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and 
(3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

Here, the Board finds that the rating criteria reasonably describe the Veteran's disability level and objective symptomatology, and provide for higher ratings for more severe symptomatology than is shown by the evidence. See 38 C.F.R. § 4.71a, Diagnostic Codes 5262, 5270-5274. For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell, 25 Vet. App. at 37. For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, supra. In this case, as already discussed, the Veteran has described severe, constant pain, popping, locking, swelling, weakness, and stiffness in the ankle, and has indicated those symptoms affect his ability to walk, stand, perform certain movements, and sit in one position for an extended period of time. He reports using hydrocodone, a heating pad, and a cane and ankle brace to treat those symptoms and their functional effects. The Board notes that the Veteran's representative has argued that the treatment methods and assistive devices used by the Veteran are not contemplated in the schedular criteria. However, they are not, in and of themselves, symptoms. Rather, they are used to treat reported symptoms, including pain, and interference with standing, weight bearing, and movement, that are contemplated in the rating criteria. As a result, the Board finds they are contemplated by the schedular criteria, and that those criteria are adequate to describe the severity and symptoms of the Veteran's disability.

Even assuming the Board had found the rating criteria inadequate to address the Veteran's symptomatology, it notes that the Veteran has not been hospitalized for his service-connected left ankle disability. Additionally, the most probative evidence of record does not suggest that his left ankle disability, considered alone, has objectively caused marked interference with his employment during the course of the claim. Indeed, the September 2014 VA examiner found that the Veteran's left ankle disability did not interfere with employment, and the September 2012 VA examiner, even after noting the Veteran's report of daily, constant, severe pain with walking, standing, and certain positions and movements, found that the condition would not prevent duties of a sedentary nature.

The Board further notes that, although it does not doubt that the Veteran experiences pain and other left ankle symptoms, his reports regarding the severity of those symptoms, which he and his representative have characterized as unusually debilitating, are rendered less persuasive by the medical evidence of record and the statements the Veteran has made when seeking treatment during the claim period. In his April 2008 notice of disagreement, for example, the Veteran stated he had daily pain of 8/10 and that he had to shift his weight or lean against something to redistribute his weight from his left ankle. In August 2010, however, he told a care provider he had current left ankle pain that was limiting his functions, but that he had not had any restriction in functional mobility prior to the onset of his current symptoms of pain approximately one month prior. He described that pain as 7/10. In April 2011, the Veteran told a care provider that he had new onset ankle pain after a fall approximately three days prior. During his May 2012 VA examination, the Veteran stated he had daily, constant, severe pain at a level of 10/10. In October 2012, he presented for treatment with what he described as severe, sharp left ankle pain at a level of 9/10. However, upon physical examination, he was noted to be using a walking cane, but was found to be in no apparent distress, with full range of motion of the ankle and the ability to bear weight. In July 2014, during a physical therapy appointment for chronic low back pain, the Veteran reported some left knee and hamstring pain, noting he had walked a lot the previous day; he did not report ankle pain. 

In short, viewing the evidence in its entirety, even if the rating criteria were found inadequate, the most probative evidence does not reflect exceptional or unusual factors in the Veteran's disability picture that would warrant referral of the claim for extraschedular consideration. 

TDIU

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that a Veteran is precluded from obtaining or maintaining any gainful employment consistent with his education and occupational experience, by reason of his service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16.

A total rating for compensation purposes may be assigned on a schedular basis where the schedular rating is less than total, when, in the judgment of the rating agency, the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more service-connected disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 

It is the established policy of the Department of Veterans Affairs that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation and Pension Service, for extra-schedular consideration all cases of Veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. 38 C.F.R. § 4.16(b).

For a Veteran to prevail on a claim for a TDIU rating, the record must reflect some factor which takes the case outside the norm. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. See 38 C.F.R. § 4.16(a); Van Hoose v. Brown, 4 Vet. App. 361 (1993).

Age may not be considered as a factor when evaluating unemployability or intercurrent disability, and it may not be used as a basis for a total disability rating. 38 C.F.R. § 4.19. There must be a determination that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age or a non-service-connected disability. 38 C.F.R. §§ 3.340, 3.341, 4.16.

Following a careful review of the record, the Board finds that the preponderance of the evidence is against the claim for a TDIU due to the service-connected left ankle disability.

At the outset, the Board notes the Veteran's left ankle disability is rated as 20 percent disabling and does not meet the requirements for a TDIU on a schedular basis. 38 C.F.R. § 4.16(a).

The Board also finds that referral for consideration of a TDIU on an extraschedular basis is not warranted, as the most probative evidence does not show that the Veteran is precluded from obtaining or maintaining employment due to his service-connected left ankle disability. 

The record reflects that the Veteran has a high school education, and a prior work history primarily as a truck driver, although records from a 2003 SSA disability determination indicate he briefly worked sorting car parts and as a machine tender. The record also indicates that he last worked in 1999. However, it does not indicate that the Veteran stopped working primarily because of his left ankle disability, and more recent evidence does not suggest that he is unable to obtain or maintain gainful employment because of the left ankle disability.

The Veteran testified in connection with his SSA claim, decided in 2003, that he was unable to work due to arthritis and prostate problems. The Administrative Law Judge who issued the decision found that the Veteran's ability to work was affected by a remote fracture in his left femur with osteoarthritis in his left hip, generalized arthritis in his left shoulder, post-traumatic arthritis in his left knee and ankle, left knee quadriceps tendinitis, and chronic prostatitis. He also found, however, that the Veteran retained the ability to perform sedentary work with limitations to occasional use of the left arm. 

As already noted in connection with the Veteran's claim for an increased rating for his left ankle disability, the two VA examiners who provided opinions on the Veteran's employability did not find that his left ankle disability precluded him from working. Indeed, the September 2014 examiner found that the disability would not affect the Veteran's ability to work in any capacity, and the May 2012 examiner found that the Veteran's ankle disability would prevent duties of a physical but not a sedentary nature. Even assuming that the Veteran's ankle disability precluded work of a physical nature, there is no indication from the record that his educational and vocational background would preclude him from performing all types of sedentary work.

Moreover, as noted above, the Board finds that the Veteran's representations of the severity of his left ankle disability and its resulting effects on his daily activities, including on his ability to work, are less persuasive than the VA examiner's opinions. There is no credible, competent evidence indicating that the Veteran is unable to perform gainful employment due to his service-connected left ankle disability. 

In summary, the Board finds that the preponderance of the probative evidence indicates the Veteran's service-connected left ankle disability does not render him incapable of performing the physical and mental acts required by employment when considered with education and his prior work history. Accordingly, the criteria for TDIU are not met, referral for extraschedular consideration is not warranted, and the claim is denied.

Because the preponderance of the evidence is against the claims, the benefit-of-the-doubt rule does not apply. Gilbert, 1 Vet. App. at 54. 


ORDER

A disability rating in excess of 20 percent for degenerative joint disease of the left ankle is denied

Entitlement to a TDIU due to a service-connected left ankle disability is denied.


REMAND

A September 2014 rating decision denied increased ratings for limitation of flexion and extension of left femur fracture, impairment of left thigh, and a TDIU based on all service-connected disabilities. The Veteran filed a notice of disagreement with that decision in January 2015. At this time a statement of the case (SOC) has not yet been issued.

Accordingly, the Board is required to remand these issues to the RO for the issuance of an SOC. See Manlincon v. West, 12 Vet. App. 238 (1999). After the RO has issued the SOC, the claim should be returned to the Board only if the Veteran perfects the appeal in a timely manner. See Smallwood v. Brown, 10 Vet. App. 93, 97 (1997).

Accordingly, these issues are remanded for the following action:

Issue a statement of the case on the claims for increased ratings for limitation of flexion of the left femur fracture, limitation of extension of the left femur fracture, and left thigh impairment, and entitlement to a TDIU based on all service-connected disabilities, so that the veteran may have the opportunity to complete an appeal on these issues (if he so desires) by filing a timely substantive appeal. The issues should only be returned to the Board if a timely substantive appeal is filed.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2014).


____________________________________________
K. A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs